**HIGMAN TOWING CO. v. COCREHAM, Acting Collector of Revenue of Louisiana.**
- Civil Action No. 215.

District Court, E. D. Louisiana,
Baton Rouge Division.
March 21, 1947.

L. J. Benckenstein, of Beaumont, Tex., and L. K. Benson, of New Orleans, La., for plaintiff.

Fred S. LeBlanc and John B. Smullin, both of Baton Rouge, La., for defendant.

DAWKINS, District Judge.

Plaintiff, a citizen of the State of Texas, sues the Collector of Revenue for the State of Louisiana for the refund of $2343.-30, with interest at 2% per annum from December 22, 1943, alleged to have been paid under protest as state income taxes for the years 1939 and 1940. As the basis for jurisdiction in this court, it is alleged that the issues involve an interpretation of the Act of Congress of February 20, 1811, 2 Stat. 641, authorizing "the inhabitants of the then territory of Orleans to form a constitution and state government * · * * with the view of admission into the Union," and also the Act of April 8, 1812, 2 Stat. 701, admitting Louisiana to statehood.

It is apparent, therefore, that jurisdiction must rest entirely upon the question of whether there is a case requiring interpretation of these Federal statutes, 28 U.S. C.A. § 41(8), since the state is not a citizen within the meaning of the diverse citizenship clause of the Federal statute and constitution, and the amount involved is less than $3000.

It is alleged that these statutes are involved because the earlier act provided:

"And provided also that said convention shall provide by an ordinance, irrevocable

without the consent of the United States, that the people inhabiting such territory do agree and declare * * * that the River Mississippi and the navigable rivers and waters leading into the same or into the Gulf of Mexico shall be common highways and forever free, as well to the inhabitants of the said state as to the other citizens of the United States, without any tax, duty, impost, or toll therefor imposed by said state."

and the latter declared:

"That it shall be taken as a condition upon which said state is incorporated into the Union that the River Mississippi, and the navigable rivers and waters leading into the same, and into the Gulf of Mexico, shall be common highways and forever free, as well to the inhabitants of the said state, as to the inhabitants of other states and the territories of the United States, without any tax, duty, impost or toll therefor imposed by the said state; * * * and that the above condition, and also all other conditions and terms contained in the third section of the Act, the title whereof is hereinbefore recited, shall be considered, deemed, and taken fundamental conditions and terms, upon which the said state is incorporated in the Union."

Therefore, it is alleged that the Act of the Louisiana Legislature for the year 1934 and the acts amendatory thereof, levying income taxes, under the provisions applicable here, were and are invalid under the said acts of Congress and the 14th Amendment of the Federal Constitution, in that they attempt to levy a tax upon interstate commerce and to restrict the use of the navigable waters of the state in violation of the conditions imposed for the admission of Louisiana into the Union.

In the alternative it is alleged that the said act and its amendments violate the due process provisions of Section 8, Article I and the 14th Amendment of the Federal Constitution; as well as Section 2, Article I, Section 1 of Article III and Section 15 of Article IV of the Louisiana Constitution.

The answer is, in substance, a general denial with the alternative plea that if the acts of 1811 and 1812 are construed to prohibit the levying of the Louisiana income taxes, they are, in that respect, "unconsti-tutional, null and void, in that they impose a restriction upon the sovereignty of the state of Louisiana, which is not imposed upon the remaining forty-seven states of the Union" in contravention of Section 9, Article I, and Section 2 of Article IV of the Federal Constitution.

The case has been submitted upon the merits under a stipulation of the facts as follows:

"It is hereby agreed by and between the parties hereto, acting by and through their respective attorneys, subject to all objections to admissibility, and subject also to the right of each of the parties to offer evidence not inconsistent or in conflict with the facts herein stipulated, that the controversy in this case concerns plaintiff's liability to the State of Louisiana for income taxes for the calendar years 1939 and 1940; and it is hereby stipulated as follows:

"(1) Plaintiff is, and at all times herein referred to, was a corporation incorporated under the laws of the State of Texas with its domicile and principal place of business at Orange, in the County of Orange, of said State. Plaintiff has also complied with the laws of Louisiana relative to qualifying to do business therein and is now, and at all times herein referred to, was authorized to do business in Louisiana.

"(2) At the time this action was filed, the defendant, Roland Cocreham, was the duly appointed and qualified Acting Collector of Revenue of the State of Louisiana and a citizen and resident of said State. Subsequent to the filing of this suit, said defendant became and is now the Collector of Revenue of the State of Louisiana.

"(3) This action arises under an Act of Congress approved February 20, 1811, entitled 'An Act to enable the people of the Territory of Orleans [Louisiana] to form a constitution and state government, and for the admission of such state into the Union, on an equal footing with the original states, and for other purposes', and under an Act of Congress approved April 8, 1812, entitled 'An Act for the admission of the State of Louisiana into the Union, and to extend the laws of the United States to the said state.'

"(4) The Court is vested with jurisdiction of this suit under Paragraph (8) of

Section 24 of the Judicial Code, as amended (28 U.S.Code 41(8), 28 U.S.C.A. § 41(8))

"(5) Under Section 8 of Article I of the Constitution of the United States, the Congress was granted the power, as therein set forth, to regulate commerce with foreign nations, and among the several states and with the Indian Tribes.

"(6) Under Section 3 of Article IV of said Constitution, the Congress was granted the power, as therein set forth, to admit new states into the Union and to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States.

"(7) Under the treaty entered into with the French Republic, dated April 30, 1803 [8 Stat. 200], the Louisiana Territory was ceded to the United States and the inhabitants of the Louisiana Territory were to be admitted to the Union of the United States in accordance with the principles of the Constitution of the United States; all as set forth in said treaty.

"(8) By the aforesaid Act, approved February 20, 1811, the Congress of the United States authorized, as therein set forth, the inhabitants of the then Territory of Orleans (forming part of the Louisiana Territory) to form a constitution and state government for said Territory of Orleans and to otherwise comply with the terms and conditions of said statute with the view of admission into the Union as a State. After said Convention had complied with the provisions of the Act of Congress approved February 20, 1811, The Congress, by Act approved April 8, 1812, did admit the said Territory of Orleans into the Union as the State of Louisiana, as set forth in said statute.

"(9) Pursuant to and in the exercise of the powers and authority vested in it, the Congress, in the Acts approved February 20, 1811 and April 8, 1812, aforesaid, did impose as a fundamental condition upon which the State of Louisiana was incorporated into the Union, 'that the river Mississippi, and the navigable rivers and waters leading into the same, and into the gulf of Mexico, shall be common highways, and forever free, as well to the inhabitants of the said state as to the inhabitants of other states and the territories of the United States, without any tax, duty, impost, or toll therefor, imposed by the said state; * * *.'

"(10) At the regular session of the Louisiana Legislature for the year 1934, said Legislature enacted a state net income tax law, being Act No. 21 of 1934, entitled 'An Act To provide for property tax relief by the levying, collecting and paying of taxes on incomes; providing for rules and regulations and prescribing penalties; providing for the collection of said tax by the Supervisor of Public Accounts, who shall be the chief administrator of this Act; providing for the creation of a Board of Tax Appeals, and making an appropriation for carrying out this Act.'

"(11) At the regular session of the Louisiana Legislature for the year 1934, said Legislature also adopted Act No. 81 of 1934, entitled 'A joint resolution Proposing an amendment to the Article X, Section 1, of the Constitution, as amended by Act 162 of 1926, relative to taxes on net incomes.' Said proposed amendment was submitted to and adopted by electors of the State of Louisiana on November 6, 1934.

"(12) Act No. 21 of 1934, referred to in paragraph (10) hereof, has been amended by Act No. 2 of the First Extraordinary Session of the Louisiana Legislature for the year 1934; Act No. 7 of the Second Extraordinary Session of the Louisiana Legislature for the year 1934; Act No. 21 of the First Extraordinary Session of the Louisiana Legislature for the year 1935; Act No. 11 of the Third Extraordinary Session of the Louisiana Legislature for the year 1935; Acts Nos. 26 and 143 of the Regular Session of the Louisiana Legislature for the year 1936; Acts Nos. 229 and 231 of the Regular Session of the Louisiana Legislature for the year 1938; Acts Nos. 119, 146 and 183 of the Regular Session of the Louisiana Legislature for the year 1940; and Acts Nos. 100, 158, 159 and 347 of the Regular Session of the Louisiana Legislature for the year 1942.

"(13) Under Section 26 of Article VI of the Constitution of Louisiana for the year 1921, as amended, the defendant, Roland Cocreham, as Collector of Revenue of the State of Louisiana, is, and at all times herein mentioned he and his predecessors in

office, were vested, as therein set forth, with all authority and power in relation to the collection of taxes and revenue under the aforesaid Act No. 21 of the Louisiana Legislature for the year 1934 and Acts amendatory thereof as were formerly vested in the Supervisor of Public Accounts.

"(14) Plaintiff did not at or during any of the time herein mentioned, nor does it presently own, operate or maintain within the State of Louisiana, any office or place of business.

"Plaintiff did not at or during any of the time herein mentioned, nor does it presently own, lease, operate or maintain within the State of Louisiana, any wharves, docks, loading, unloading, storage or other facilities, nor did plaintiff at or during any of the time herein mentioned, nor does it presently have any tangible or intangible property, whether real or personal, permanently located within the State of Louisiana.

"Plaintiff does not own and operate tugs and barges which enter into or pass through or operate within the State of Louisiana, upon the navigable rivers and waters, as hereinafter more fully set forth. Said tugs and barges are manned by seamen and officers, residing in Texas, who are employed by plaintiff at its principal and only office at Orange, Texas.

"(15) Plaintiff is solely and exclusively engaged in the transportation of petroleum and petroleum products and the transportation of drilling barges and other water craft by water by means of tugs and barges. All of such tugs and barges used in plaintiff's business operate from the City of Orange, State of Texas, as their home port. All of such tugs and barges are registered, enrolled and documented (under Title 46, Chapter 12, U.S.Code, as amended [46 U.S. C.A. § 251 et seq.]), in the United States Customs Office at Port Arthur, Texas, which office has jurisdiction over the City of Orange, State of Texas.

"(16) In conducting and carrying on its said business, plaintiff's tugs and barges operate upon and navigate on the navigable waters lying within the States of Texas, Louisiana, Mississippi and Alabama, which navigable waters are interconnected and form common highways of commerce in and between said States, and include, so far as pertains to Louisiana, only the Missis-

sippi River and other navigable rivers and waters in the State of Louisiana (including the Intracostal Canal) leading into the Mississippi River and leading into the Gulf of Mexico.

"(17) The navigable waters and rivers lying within the State of Louisiana upon which plaintiff's tugs and barges operate as aforesaid are exclusively maintained and improved by the Federal Government with Federal funds; and no part of the revenues of the State of Louisiana are expended for such purposes.

"(18) The navigation of plaintiff's tugs and barges upon the waters and rivers lying within the State of Louisiana is controlled by Federal Statutes, Regulations and Pilot Rules, which are exclusively administered by Federal agencies and instrumentalities.

"(19) Plaintiff derives no income or revenue of any kind or character, except that derived from its business of operating tugs and barges as set forth in this stipulation. Plaintiff makes no contracts in, and collects no income or revenue of any kind in the State of Louisiana. All contracts are made and all revenues pertaining to plaintiff's business are collected by plaintiff at its principal and only office, which is located in the City of Orange, State of Texas. The rates which plaintiff charges its customers for the transportation services which plaintiff performs are not uniform, but are based upon variable factors and are determined in each instance by negotiations.

"(20) In conducting its business of operating tugs and barges during the calendar years 1939 and 1940, plaintiff's said tugs and barges, moving upon the aforesaid navigable rivers and waters in the States of Texas and Louisiana, transported petroleum and petroleum products (a) from points in Texas to other points in Texas; (b) from points in Texas to points in Louisiana; (c) from points in Louisiana to points in Texas; and (d) from points in Louisiana to other points in Louisiana. Plaintiff's tugs and barges, on arriving at any Louisiana loading or unloading point, irrespective of the origin of the voyage, remained at such loading or unloading point only long enough to load or unload the cargo, and, after completing the transportation service in which such tugs and barges returned to their home port of Orange, Texas.

632

"(21) The points of loading and unloading of the cargoes transported, as referred to in the next preceding paragraph, between points in Louisiana and points in Texas, which occurred during the year 1939, the cargoes transported, the gross revenue therefrom, and the fraction representing the ratio of miles traveled in Louisiana to total miles traveled in transporting said respective cargoes are shown on the tabulation annexed hereto and marked "Exhibit 1" for identification. The points of loading and unloading of the cargoes transported, as referred to in the next preceding paragraph, between points in Louisiana and points in Texas, which occurred during the year 1940, the cargoes transported, the gross revenue therefrom, and the fraction representing the ratio of miles traveled in Louisiana to total miles traveled in transporting said respective cargoes are shown on the tabulation annexed hereto and marked "Exhibit 2" for identification.

"(22) After considerable correspondence and conferences between the Collector of Revenue and plaintiff, in which the Collector continuously insisted that plaintiff was required, by the terms of Act No. 21 of 1934, as amended, to file income tax returns and pay income taxes under said statute and that the failure to file returns and pay taxes would constitute delinquency, and in which plaintiff continuously insisted that it was not legally required to file any return or to pay any tax, the Collector of Revenue, demanded that plaintiff file returns for the years 1939 and 1940 under said Act No. 21 of 1934, and Acts amendatory thereof, showing all income derived by plaintiff from its business and operations within the State of Louisiana, including income derived in navigating the Mississippi River and other rivers and waters lying within the State of Louisiana as aforesaid, in the transportation of petroleum and petroleum products, irrespective of whether such transportation originated or terminated in or passed through said state; and demanded that plaintiff pay taxes under said statute on the net income derived by plaintiff from property located in or from services rendered or from business transacted in Louisiana or from sources within said State during such respective years.

"(23) Because of such demand, on or about October 25, 1941, plaintiff filed income tax returns for the years 1939 and 1940 and paid to the Collector of Revenue for the State of Louisiana, under oral protest made to his deputy, as taxes for the year 1939, the sum of $420.74, and as taxes for the year 1940, the sum of $1,009.40, which taxes were based only on income derived from transportation services performed by plaintiff in navigating in and upon said rivers and waters solely within the State of Louisiana, and did not include income derived from movements into, from or through the State of Louisiana. The amounts mentioned in this paragraph (23) are not involved in this suit. Claims for refund of said amounts, however, were timely filed with the Collector of Revenue, under Act No. 21 of 1934, as amended, and are now pending in the Collector's office.

"(24) Subsequently, on or about March 24, 1943, and again on or about December 14, 1943, the Collector of Revenue, demanded payment by plaintiff of additional income taxes under Act No. 21 of the Louisiana Legislature of 1934, as amended, for the years 1939 and 1940, based on income derived from plaintiff from transportation services performed by plaintiff in navigating in and upon the aforesaid navigable rivers and waters between points in Louisiana and points in Texas, in the sum of $1,029.47 plus $236.18 interest, or a total of $1,265.65 for the year 1939 and the sum of $923.72 plus $153.97 interest, or a total of $1,077.65 for the year 1940.

"(25) On or about December 22, 1943, pursuant to said demands and because of threats made by said defendant's representatives to seize and sell plaintiff's tugs and barges under the provisions of said Act No. 21 of 1934, as amended, plaintiff, under Act No. 330 of the Louisiana Legislature of 1938 and Act No. 157 of the Louisiana Legislature of 1942, paid to said defendant, as the Acting Collector of Revenue, the aforesaid amounts of $1,265.65 and $1,077.65, for the years 1939 and 1940, respectively, under protest, according to law, and brought this action for the recovery thereof, plus accrued interest.

"(26) The pertinent Articles of the Regulations of the Collector of Revenue ap-

plicable to the year 1939, are annexed hereto as 'Appendix A.' (I) The pertinent Articles of the regulations of the Collector of Revenue applicable to the year 1940 are annexed hereto as 'Appendix B.'

"(27) The separate accounting method referred to in regulations set out in Appendix A and Appendix B was not used by plaintiff in the conduct of its business.

"(28) The additional taxes referred to in paragraphs (24) and (25) hereof were computed and assessed against plaintiff by the Collector of Revenue by applying amounts shown in plaintiff's returns for the years 1939 and 1940 respectively to a barrels-miles formula prepared by the Collector, which formula, (containing hypothetical figures) is set forth in the annexed schedule (II) marked 'Exhibit 3' for identification.

"The exhibits mentioned in the stipulation are shown in the footnotes.*

---

* "Appendix A."

(I) "Article 209. Foreign Corporations and Non-Resident Individuals Situs of Income.—Income is of two classes, (a) that which follows the situs of the business or property from which the income is derived and (b) that which follows the residence of the recipient.

"The income from mercantile, manufacturing, financial, or other business carried on in whole or in part in Louisiana is subject to tax. Where only a portion of the total operations are within Louisiana, only a corresponding part of the total income will be taxable as determined under the rules of apportionment or segregated accounting."

"Article 213. Income Allocable to Louisiana Business; Methods of Determining. —Foreign corporations and non-resident individuals engaged in business within and without the State are taxable only on such income as is derived from business transacted and property located within the State. Two general methods of determining the income attributable to Louisiana from business transacted within and without the State are provided. These methods are (1) the separate accounting method, and (2) the apportionment method. Permission to change from one to the other must be obtained from the Collector of Revenue.

"Article 214. Separate Accounting Method.—When the nature of the business will permit of a separate accounting for Louisiana business which will clearly reflect taxable income, this method should be used in preference to the apportionment method.

"When the separate method of accounting is used, separate records must be kept of sales, cost of sales, and expenses for the Louisiana business as distinct from the remainder of the business. Overhead items of income and expense must then be allocated to the business within and without Louisiana upon a basis or combination of bases justified by the facts and conditions. For example: The ratio of Louisiana sales to total sales usually represents a satisfactory basis for a merchandising business while the ratio of direct cost of material and labor in Louisiana to the total gives a more accurate result for a construction business. Federal income taxes are based upon income and should, therefore, be allocated to Louisiana business on the basis of net income. Federal income taxes are deductible in the year paid or accrued; no estimated amount, however, can be deducted, only the actual amount paid or accrued. The allocation to Louisiana business for any year, therefore, must be based upon the ratio of net income within Louisiana to the total net income for the year for which the Federal income taxes are assessed, even though that ratio differs from the ratio of the year in which the taxes are actually paid.

"Article 215. Apportionment Method of Reporting.—When, in the judgment of the Collector of Revenue, the taxable income in Louisiana can not properly be determined by a separate accounting for business within and without the State, the apportionment method must be used.

"In making an apportionment of income, there are two kinds of income to be considered, which are (1) apportionable income and (2) non-apportionable income. Non-apportionable income is that income which either follows the situs of property or the residence of the recipient, such as net rents and royalties and net profits from sales of tangible property. Any nonapportionable income attributable to Louisiana must be added to the apportionable income allocated to Louisiana to determine the total Louisiana net income.

"Article 216. Apportionment of Income from Business Within and Without the State.—If a foreign corporation carries on business both within and without the State, the net business income therefrom must be apportioned so as to allocate to Louisiana a proportion of such income on a fair and equitable basis, in accordance with approved methods of accounting. The Louisiana Income Tax Law specifically provides that 'a foreign corporation shall receive the benefit of the deductions and credits allowed to it' under the Act 'only by filing or causing to be filed with

"(29) Nothing contained in this stipulation shall be construed as an acquiescence or acknowledgement by plaintiff that any rules or regulations published by any Col-

the Collector a true and accurate return of its total income received from all sources in the United States, including therein all the information which the Collector may deem necessary for the calculations of such deductions and credits.'

"If the books of the corporation are so kept as regularly to disclose, and the return as filed so discloses, the proportion of its business income which is derived from sources within the State, and the return also discloses both the total income and the part allocated to Louisiana, such return will be accepted by the Collector if it allocates to Louisiana income derived from sources in Louisiana on a fair and equitable basis. If the corporation reports the Louisiana business separate from its total business as reported on Form IT 620, it must attach, as a separate schedule, an additional schedule similar to Form IT 620 to cover only its Louisiana business.

"If the books of the corporation do not disclose the proportion of its net income from sources within the State, its return or if the basis of apportionment used by it is not approved by the Collector of Revenue, its amended return, shall disclose its net income from business both within and without the State, and the tax will be computed and collected upon the portion of its total net income from business which the aggregate of the Louisiana Factors bears to the aggregate Total Factors as defined below.

"The 'Louisiana Factors' shall include the following:

"(1) The average of the value of the corporation's real (immovable) property and tangible personal (movable) property within the State, (a) at the beginning of the taxable year and (b) at the end of the taxable year. Reflect depreciation reserve balances by deducting from the book values the accumulated depreciation reserves on the properties in question. Eliminate from book values all appreciation.

"(2) The total wages, salaries, and other personal service compensation paid during the taxable year to employees in connection with the business carried on within the State.

"(3) The net sales or charges for services performed, by or through any branch, agency, office ⁻r other place of business within the State. The sales or charges to be allocated to Louisiana shall include all sales consummated by salesmen, or services performed by other representatives, attached to or sent from offices or other agencies situated within the State.

"The 'Total Factors' shall include the following: The Total (including those of Louisiana) of the corporation's 'factors' corresponding to the above 'Louisiana Factors.' "

"Exhibit 3."

(II)

(1) Separate all hauls (both intrastate and interstate) into groups according to points of origination and destination; for example:

| Origination | Group | Destination | Bbls. | Total Miles | La. Miles | Total Bbl.-Mis. | La. Bbl.-Mis. |
|---|---|---|---|---|---|---|---|
| A | to | X | 30,000 | 30 | 8 | 900,000 | 240,000 |
| B | to | X | 20,000 | 25 | 3 | 500,000 | 60,000 |
| C | to | X | 40,000 | 18 | 0 | 720,000 | 0 |
| A | to | Y | 10,000 | 25 | 4 | 250,000 | 40,000 |
| B | to | Y | 40,000 | 10 | 10 | 400,000 | 400,000 |
| AA | to | Z | 40,000 | 20 | 5 | 800.000 | 200,000 |
| C | to | Z | 30,000 | 18 | 4 | 540,000 | 120,000 |
| | | | | | | 4,110,000 | 1,060,000 |

(2) Divide total net income of the company by the total barrel-miles to get the average income earned for moving one barrel one mile.

(3) Multiply the figure computed in (2) by the Louisiana barrel-miles.

Total Net Income $ 100,000
————————————————— =.024331
Total Bbl. Miles  4,110,000
$1,060,000 x .024331=$25,790.86.

lector of the State of Louisiana are legal or valid rules or regulations.

"(30) For the purposes of this case, it is now agreed that in the event it should be decided that plaintiff is liable for income taxes for the years 1939 and 1940, under said Act No. 21 of 1934, as amended, in respect to its interstate business, the amount of such taxes, when computed in accordance with applicable Regulations set out in Appendix A and Appendix B, due by plaintiff is $617.69 for 1939 and $554.24 for 1940; said amounts to bear statutory interest (6% per annum) from May 15, 1940 on 1939 taxes and from May 15, 1941 on 1940 taxes, respectively, to December 23, 1943. Overpaid taxes and interest are to be refunded.

"(31) Counsel for the respective parties reserve the right to quote, cite or otherwise refer to (in any argument or brief) to any provision of any constitution or statute, state or federal, any treaties, regulations of the Department of Revenue of the State of Louisiana, text books or decided cases, whether herein referred to or not; the intention hereof being that nothing herein contained shall be construed to prejudice the rights of either of the parties hereto as to the validity, proper interpretation, construction or application of any provision of any constitution, treaty, statute or regulation or as to any other question of law."

The questions presented are as follows:

(1) Does the collection of a tax upon the income derived from plaintiff's operations in Louisiana, as disclosed, by the stipulation of facts contravene the cited Federal statutes of 1811 and 1812 as alleged;

(2) Does the tax violate the provisions of the Federal Constitution relied upon; and

(3) Are the alleged infringements of the state constitution well founded:

(1) In the first place it must be remembered that the tax is not imposed upon the use of the navigable waters of the state, as such, but upon income earned in Louisiana. It is true that the method of its determination is by a "barrel-miles" formula. In other words, the business of plaintiff is the transporting of petroleum and its products, well drilling machinery, etc., presumably on a tonnage basis, from the point of origin to destination. If I understand the matter correctly, a given shipment into the state carries a certain charge for the entire trip; the amount thus earned is divided by the number of miles traveled, and in the case of petroleum, the result is further divided by the number of barrels transported to get the freight per mile per barrel, and that portion of the mileage traveled in Louisiana is multiplied by the number of barrels brought into the state to get the amount collected from operations here. From this is deducted, of course, all those items of expense, etc., allowed income tax payers in the state to get the net income, which is taxable.

██ Income taxes, like all other general taxes, are imposed to provide the state or its sub-divisions with means to discharge governmental functions, which include the protection of life and property in the state. The operators of barges, tugs, etc., and other property used for the transporting of merchandise upon the navigable streams and highways of the state, whether resident or non-resident, and whether engaged in intra or interstate commerce, enjoy equally that protection, and taxes which are not imposed directly upon the use of those avenues of commerce, or upon commerce itself, can not be said to be burdens even upon interstate commerce or the use of these channels of trade, within the meaning of that term. It is true that a tax upon net income of such a business as here involved must be paid from its earnings; but it is payable only if there remains a profit, and this would seem to demonstrate that it is not paid for use of those facilities. See United States Glue Co. v. Town of Oak Creek, 247 U.S. 321, 38 S.Ct. 499, 62 L.Ed. 1135, Ann. Cas.1918E, 748; Underwood Typewriter Co. v. Chamberlain, Treasurer of the State of Conn., 254 U.S. 113, 41 S.Ct. 45, 65 L.Ed. 165. It follows that, since the taxing statute here involved does not affect or place any restriction upon the enjoyment of these rights and privileges, vouchsafed to users of these avenues of commerce, the contention in that regard is without merit.

Plaintiff cites the early case of Pollard et al. v. Hagan et al., 3 How. 212, 11 L.Ed. 565, as supporting the contention that the state because of these Federal statutes can do nothing to affect the right of free navigation of its waters. There the question was one of title to certain lots in the city of Mobile, Alabama, and it was held, as has been done in all cases since that time, that while title to the public and unappropriated lands passing to the United States under treaties with Spain, France and other nations, was in the national government, the fee of the beds of navigable waters became the property of the individual states when admitted into the Union, by virtue of their inherent sovereignty. This ownership, however, was subject to the paramount control of the Federal Government over navigation and commerce on those waters. The language quoted by counsel does nothing more than to affirm, as obiter dicta, more or less, that superior authority, since the verdict of the jury finding that the lots in question were covered by navigable waters when Alabama was admitted into the Union, was affirmed by the Supreme Court, thereby sustaining the title of defendants, which emanated from the state as against the plaintiffs, who claimed a patent from the United States.

While the collection and citation of many well known publications and documents by plaintiff are of great historical interest, it is not thought that they have any particular bearing upon the law of this case. In the main, they disclose both the background and wisdom of the authors of our national government in placing the control of commerce between the states and with foreign nations in its hands. We have thereby avoided the fetters which have strangled intercourse between other nations, insofar as it might otherwise have lain within the power of the individual states of this Union to impose them.

It is hardly necessary to point out that Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23, was an unsuccessful attempt by the state of New York to grant an exclusive monopoly for the operation of steamboats upon the navigable streams of that state. This is one of the great pillars erected by John Marshall which support the power of the national government, and made this a union of sovereign states. Every case since, such as Sinnot v. Davenport, 22 How. 227, 16 L.Ed. 243, has affirmed the supremacy of that authority within the field of powers, delegated or implied, under the Constitution. Still others, such as United States v. Rio Grande Dam & Irrigation Co., 174 U.S. 690, 19 S.Ct. 770, 43 L.Ed. 1136, proclaimed the irrefutable doctrine that this supreme authority over navigation and interstate commerce continues unabated, and can not be affected by any action of the states, or the terms of their admission into the Union.

Without going further into an analysis of the many decisions cited by plaintiff, I am impressed that one of them, Coyle v. Smith, 221 U.S. 559, 31 S.Ct. 688, 693, 55 L.Ed. 853, epitomizes the law as to the powers which can not be affected by action of the individual states such as those over navigable waters and other interstate highways, and commerce upon them. There the Act of June 16, 1906, 34 Stat. 267, admitting Oklahoma as a state had required that the capital remain in Guthrie until 1913. By a statute of its own passed December 29, 1910, 73 O.S.1941 § 1, the state removed the capital to Oklahoma City, and opponents of the change challenged the action as violative of that condition for admission. In distinguishing between provisions of this nature and those involving powers of the national government given in the Constitution, the Court, through Mr. Justice Lurton, said:

"It may well happen that Congress should embrace in an enactment introducing a new state into the Union legislation intended as a regulation of commerce among the states, or with Indian tribes situated within the limits of such new state, or regulations touching the sole care and disposition of the public lands or reservations therein, which might be upheld as legislation within the sphere of the plain power of Congress. But in every such case such legislation would derive its force not from any agreement or compact with the proposed new state, nor by reason of its acceptance of such enactment as a term of admission, but solely because the

power of Congress extended to the subject, and therefore would not operate to restrict the state's legislative power in respect of any matter which was not plainly within the regulating power of Congress. Willamette Iron Bridge Co. v. Hatch, 125 U.S. 1, 9, 8 S.Ct. 811, 31 L.Ed. 629; Pollard's [Lessee] v. Hagan, supra.

"No such question is presented here. The legislation in the Oklahoma enabling act relating to the location of the capital of the state, if construed as forbidding a removal by the state after its admission as a state, is referable to no power granted to Congress over the subject, and if it is to be upheld at all, it must be implied from the power to admit new states. If power to impose such a restriction upon the general and undelegated power of a state be conceded as implied from the power to admit a new state, where is the line to be drawn against restrictions imposed upon new states. The insistence finds no support in the decisions of this court."

■ The same principles apply here. The power of Congress to require, in the Act admitting Louisiana to statehood, that nothing be done to restrict the free use of its navigable waters, arose from the Constitution itself which delegated to the national government exclusive control of that subject. But this power must be construed consistently with the exercise by the state of its sovereign right to lay taxes for the support of its government. A direct tax, however disguised, upon the use of such waters would conflict with the national authority and the measures asserting it; but this does not extend to a reasonable and non-discriminating tax imposed upon the fruits or net profits arising from a business enjoying these privileges under the protection of the state government.

■ (2) The same basic principles apply to the contention that the tax imposes an unconstitutional burden upon interstate commerce and the authorities cited warrant the conclusion that this contention is likewise unfounded.

■ (3) This leaves for consideration the more serious question as to whether or not the income tax law violates state constitutional provisions by delegating legislative power to the revenue collector, and fails to prescribe a definite guide for its application and administration under permissible regulations, to be formulated by that officer.

Section 1 of Article X of the state constitution vests the power of taxation in the Legislature and limits the purposes for which it may be exercised; declares the right of every taxpayer to resort to the courts for protection against illegal taxation, and that the values fixed for state purposes shall govern for local purposes. With respect to income taxes, this section recites:

"Equal and uniform taxes may be levied upon net incomes, and such taxes may be graduated according to the amount of the net income. Public officials shall not be exempted. Reasonable exemptions may be allowed.

\*   \*   \*   \*   \*   \*

"Any legislation adopted at the regular session of the Legislature in 1934 based upon this proposed amendment shall be validated and ratified by the adoption of this amendment.

"The said income tax schedule of rates shall never exceed the schedule imposed in House Bill No. 339 of the Regular Session of the Legislature for the year 1934."

The pertinent portion of Section 34 of Act 21 of 1934 (the first income tax statute), as amended, is as follows:

"(b) Non-Resident Individuals and Foreign Corporations.—In the case of a nonresident individual or foreign corporation, items of gross income, expenses, losses, and deductions, from whatever source received or incurred, not otherwise exempted by this Act, shall be included in the taxpayers return; but, for the purpose of this Act, the amount of tax shall be computed only upon the net income earned within [or derived from sources] within this State. In arriving at the net income earned within [or derived from sources within] the state of Louisiana, items of gross income, expenses, losses and deductions, not otherwise exempted by this Act, shall be allocated or apportioned to sources within or without the state of Louisiana,

under the rules and regulations prescribed by the Supervisor. Where items of gross income are separately allocated to sources within the state, there shall be deducted (for the purpose of computing the net income therefrom) the expenses, losses, and other deductions * * * which can not definitely be allocated to some item or class of gross income. The remainder, if any, shall be included in full as net income from sources within the state of Louisiana. In the case of gross income derived from sources partly within and partly without the state of Louisiana, the net income may first be computed by deducting the expenses, losses, or other deductions apportioned or allocated thereto and a ratable part of any expenses, losses, or other deductions which cannot definitely be allocated to some items or class of gross income; and the portion of such net income attributable to sources within the state of Louisiana may be determined by processes or formulas of general apportionment prescribed by the Supervisor. Gains profits, and income from:

"(1) transportation or other services rendered partly within and partly without the State of Louisiana shall be treated as derived from sources within and partly from sources without the State of Louisiana."

This statute clearly defines the income to be taxed. It is the net income arising from business done in the state, but leaves to the Collector the duty of ascertaining this net income "by the processes or formulas of general apportionment." As stated earlier, the method used in this instance as to petroleum is the "barrel-mile" unit, which attributes to each barrel transported its share of net income from the entire shipment, in proportion to the mileage traveled in Louisiana to that of the entire journey from origin to destination.

"Appendix A" and "Appendix B" attached to the stipulation of facts contain the regulations applicable to the ascertainment of the amounts of the tax for the years 1939 and 1940, respectively. These formulas are designated as the "Separate Accounting Method," and the "Apportionment Method," but "permission to change from one to the other must be obtained from the Collector of Revenue." See Article 213 of "Appendix A." Details for the use of the "Separate Accounting Method" are found in Section 214 of said appendix, and those of the "Apportionment Method of Reporting" are found in Section 215 of the same instrument. The latter is to be used when, in the judgment of the Collector, "the taxable income in Louisiana can not properly be determined by a separate accounting for business within and without the state * * *."

Corresponding provisions of "Appendix B" covering the year 1940 are substantially the same; although there were certain changes and additions which authorized the Collector to require the use of either method, accounting or apportionment, if this was found necessary to ascertain the correct net income from business in the state. It must be remembered that these regulations applied to all types of business, including that of plaintiff and were written in the light of those conditions.

Stipulation 28 discloses that the taxes for the two years in question were determined by the "apportionment method" and the "barrel-mile" formula described above.

In view of this great variety of business to be dealt with and the different types of records kept by the taxpayers, many of whom, including plaintiff, resided and kept their records outside the state, it was not practicable to include in the statute itself the many details for the ascertainment of net income. It was sufficient, therefore, to declare the governing factors, i. e., that the tax should be upon that portion of the net income arising from business done in whole or in part in this state and to leave to the Collector the duty of prescribing the method of ascertaining it, under rules of general application authorized by the statute.

Plaintiff further relies upon the case of Standard Oil Co. v. Collector, 210 La. 428, 27 So.2d 268, 269, as supporting the contention that the provisions of the state income tax law authorizing the Collector to make rules and regulations for ascertaining taxable income, are invalid because they delegate to that officer legislative powers, contrary to the state constitution. In that case Section 107 of the regulations

alone was involved. The issue is revealed by the following quotation:

"This article with reference to oil and gas wells provides, as stated in brief filed by counsel for the Collector, 'That all amounts paid for labor, fuel, repairs, supplies, hauling, and other services which are used in drilling a well or the preparation for such drilling, commonly known as "intangible costs" must be capitalized, that is to say, treated as part of the capital investment and not treated as a deductible business expense' for the year in which incurred.

"Prior to the adoption of Act No. 21 of 1934 (the Louisiana state income tax law), the Commissioner of Internal Revenue of the United States had promulgated a rule permitting taxpayers the option of either capitalizing intangible expenses in the drilling of oil or gas wells and recovering them through depletion, or treating them as business expenses and deducting them from revenue for the year in which they were incurred. After the adoption of the Louisiana income tax law, the Collector of Revenue of this state also permitted the option until the promulgation of Article 107 in the month of November, 1938.

"Subsections (a) and (m) of Section 9, Act No. 21 of the Louisiana Legislature for the year 1934, read as follows:

"'Section 9. Deductions from Gross Income.—In computing net income there shall be allowed as deductions:

"'(a) Expenses.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodgings) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

\* \* \* \* \* \*

"'(m) Depletion.—In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Supervisor (now Collector of Revenue). \* \* \*'

"These provisions in the Louisiana act are identical with corresponding provisions in the Federal Revenue Acts of 1932 and 1934, § 23, 26 U.S.C.A.Int.Rev.Acts, pages 489, 671, and were copied therefrom.

"The taxpayer in this case contends that Article 107 is an invalid attempt on the part of the Collector to deprive taxpayers of a deduction allowed them by the Louisiana income tax law, and, in the alternative, that, if this article is held valid, it nevertheless cannot be applied retroactively to income tax returns for the year 1937."

The state supreme court adopted and quoted the opinion of the district court holding that the Collector had no power to deny to the taxpayer the right to deduct the items involved as expenses, and that the attempt to do so by Article 107 amounted to a legislative change, which the Legislature alone could make. One of the reasons for this conclusion was, that the provisions of the state law upon the subject were copied from a Federal statute, under which the taxpayer was accorded the choice of either capitalizing such items or deducting them as expenses in arriving at net income, and that the interpretations of the Federal Act became part of the law when its exact provisions were adopted by the state.

It does not follow that, because the state court has found Article 107 invalid for the reasons stated, the sections assailed here are also ineffective, unless supported by similar considerations and unless they clearly involve an attempt to legislate as to matters permitted alone to the Legislature, or as to which it has omitted to provide where legislation is indispensable. I do not believe that any of these conditions are present in this case. It is true that there was an admitted error in the amounts of the tax due under the formula used, but this is not sufficient to justify a holding that it was invalid for the reasons claimed. Ample relief will be afforded by the recovery of

the overpayment, which more correct calculation has determined.

For the reasons announced plaintiff should recover only the excess amount admitted to be due. •

Proper decree should be presented.