**Ruby G. SMITH, Plaintiff,**

v.

**CENTER FORD, INC. and Hall Auto World, Inc., Defendants.**

No. Civ.A. 4:98cv131.

United States District Court,
E.D. Virginia,
Newport News Division.

Nov. 8, 1999.

Jay Joseph Levit, John B. Mann, Levit, Mann & Halligan, Richmond, VA, for plaintiffs.

James A. Gorry, III, Taylor & Walker, Norfolk, VA, for defendants.

### OPINION AND ORDER

FRIEDMAN, District Judge.

Defendants filed a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The Court heard argument on the motion to dismiss on October 22, 1999. For the reasons set forth below, defendants' motion to dismiss is **DENIED.**

*Factual and Procedural Background*

Plaintiff's complaint alleges a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), because she was subject to: 1) sexual harassment; 2) a hostile work environment; and 3) retaliation for reporting incidents of sexual harassment. The defendants have moved for dismissal for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting that the plaintiff has failed to exhaust state law remedies as required by Title VII.

### I. Worksharing Agreement Between the EEOC and the VCHR[1]

In addition to creating the substantive rights set forth in Title VII, Congress empowered the Equal Employment Opportunity Commission ("EEOC") with the authority to enforce Title VII by, inter alia, acting on individual complaints. *See* 42 U.S.C. § 2000e–4. The EEOC has been vested with the power "to cooperate with, and with their consent, utilize regional, State, local, and other agencies, both public and private, ..." 42 U.S.C. § 2000e–4(g)(1). The EEOC has entered into a Worksharing Agreement ("Agreement") with the Virginia Council on Human Rights ("VCHR")[2] in order "to provide

---

1. With the consent of the parties, the discovery documents from the consolidated cases before Judge Payne in *Dew v. Nabisco, Inc. et al.*, Nos. 3:99cv353, 3:99cv117, 3:99cv188 (E.D.Va. Oct. 4, 1999), have been incorporated into the record of this case.

2. The VCHR is a state administrative agency that is empowered, pursuant to the Virginia

individuals with an efficient procedure for obtaining redress for their grievances under appropriate State or Federal laws." Worksharing Agreement Between Virginia Council on Human Rights and Equal Employment Opportunity Commission for Fiscal Year 1995, ¶ I–B [hereinafter 1995 Worksharing Agreement]. In the Agreement, each agency designates the other as its agent for the purposes of receiving and drafting charges "in order to facilitate the filing of charges in employment discrimination." *Id.* at ¶ II–B. The Agreement further states that "[f]or charges originally received by the EEOC and/or to be initially processed by the EEOC, the [VCHR] waives its right of exclusive jurisdiction to initially process such charges for a period of 60 days for the purposes of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day." *Id.* at ¶ III–A (as amended).

When one agency initially receives a charge, the Agreement provides that it will communicate the charge to the other. *See id.* at ¶¶ II–C, II–E. The forms typically used to communicate that information are the Charge of Discrimination Form 5 ("EEOC Form 5") and a Transmittal Form 212 ("EEOC Form 212"). The Form 5, which is prepared by either an EEOC or VCHR agent and signed by the complainant upon the agent's receipt of the relevant information from the complainant, notifies the other agency of the nature of the charge filed by the particular complainant. The Form 212 is utilized to decide which agency will pursue investigation of the charge. With the Form 212, the intake agency (the agency with whom the complainant initially filed the charge) completes and signs the upper half of the form. The form is then sent to the other agency in order for the bottom half of the

form to be completed, signed, and returned to the intake agency.

This Agreement, therefore, is authorized by Title VII and by Virginia law, and pursuant to it, the EEOC and VCHR have established a practice of regularly communicating the fact that the charges have been made and considering the charges to have been "dual filed" with both signatory agencies once they have been filed with one of them. *See* Cheryll Patterson, Charge Recipient and Unite Technical Handling at EEOC in Norfolk, Deposition at 24 ("Patterson Dep."); Sandra Norman, Administrative Staff Specialist with the VCHR, Deposition at 13 ("Norman Dep."). The Agreement, both at the time the plaintiff filed her charge (fiscal year 1995) and currently, is relied upon by the agencies as the definition of the agencies' working relationship and the practices that they follow when a complainant makes a charge of employment discrimination.

On September 27, 1995, plaintiff filed a complaint against her employer in the Norfolk, Virginia office of the EEOC. Based on answers given to the EEOC by the plaintiff, the EEOC staff prepared an EEOC Form 5 which plaintiff signed under penalty of perjury on September 27, 1995. The EEOC Form 5 briefly sets forth the essential facts of plaintiff's claim and contains the declaration: "I believe that I was sexually harassed because of my sex, female and discharged as an act of retaliation because I complained of sexual harassment, all in violation of Title VII of the Civ[i]l Right[s] (sic) Act of 1964, as amended." The recited text respecting the source of law for a claim is a computer-produced boilerplate statement entered by the EEOC. *See Dew,* at 6. Plaintiff's Form 5 contained the preprinted textual statement: "I want this charge filed with both the EEOC and the State or local Agency,

---

Human Rights Act, to receive, process and investigate claims of employment discrimination occurring within Virginia filed against employers employing more than five but less than fifteen persons. *See* Va.Code Ann. § 2.1–714, *et seq.* The VCHR is likewise au-

thorized to "enter into cooperative worksharing agreements with federal agencies or local commissions, including the deferral of complaints of discrimination to federal agencies or local commission." Va.Code Ann. § 2.1–720.5.

if any." Adjacent to that text is a box (the "Box") in which a check mark is to be placed if the response is in the affirmative. The Box was not checked on plaintiff's EEOC Form 5.

On September 28, 1995, the EEOC forwarded the EEOC Form 5 and EEOC Form 212 to the VCHR. The EEOC Form 212 for plaintiff's complaint, which was completed and signed by the EEOC, reflects that the charge of employment discrimination initially was received by the EEOC. According to the Form 212, "pursuant to the worksharing agreement," the charge was to be initially investigated by the EEOC. The bottom half of the form was then completed by the VCHR (signed by Ms. Kornegay, the VCHR Director) thereby "acknowledg[ing] receipt of the referenced charge and indicat[ing] [the VCHR]'s intention not to initially investigate the charge." On October 18, 1995, the VCHR returned plaintiff's forms to the EEOC and, on June 23, 1998, the EEOC issued plaintiff a right-to-sue letter. Plaintiff timely filed this action on September 24, 1998, 90 days after the right-to-sue letter was issued.[3]

### Analysis

Defendants assert that plaintiff did not satisfy the administrative requirements of Title VII which are the essential predicate to confer jurisdiction upon the EEOC, and, therefore this Court lacks subject matter jurisdiction over plaintiff's claim. As recognized by a series of recent District Court opinions, this jurisdictional challenge stems from two decisions by the United States Court of Appeals for the Fourth Circuit, interpreting provisions of Title VII respecting the role of state agencies in Title VII's enforcement scheme.

3. Title VII provides that a complainant must bring a civil action within 90 days after having received a right-to-sue letter. *See* 42 U.S.C. § 2000e–5(f)(1).

4. 42 U.S.C. § 2000e–5(c) states: "[i]n the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice

In *Tinsley v. First Union National Bank*, 155 F.3d 435 (4th Cir.1998), the Fourth Circuit held that because the VCHR is a deferral agency, Virginia is a "deferral state" within the meaning of Title VII. *See id.* at 441–42. In *Davis v. North Carolina Department of Correction*, 48 F.3d 134 (4th Cir.1995), the Court of Appeals held that in a deferral state, the complaining party is required by Title VII to have first commenced proceedings with the deferral agency "under State or local law" before the complainant can proceed in the EEOC or file an action over which a federal court has subject matter jurisdiction. *See id.* at 138; *see also* 42 U.S.C. § 2000e–5(c).[4] In an unpublished opinion, *Dodge v. Philip Morris, Inc.*, No. 99–1968, 1999 WL 162955 (4th Cir. March 25, 1999), the Fourth Circuit held that because a plaintiff had failed to include a state law claim, she had not commenced proceedings under state law, and the Court, therefore, lacked subject matter jurisdiction. While this unpublished opinion has been widely cited, the Fourth Circuit in *Dodge* explicitly stated that it was not deciding "whether the filing with the EEOC satisfied the requirement of commencing state proceedings with the VCHR." *Id.* at *2, 1999 WL 162955. While *Dodge* does not serve as precedent, it is informative.

The facts present in this case are quite similar to those in a consolidated case before Judge Payne in *Dew v. Nabisco, Inc. et al.*, Nos. 3:99cv353, 3:99cv117, 3:99cv188 (E.D.Va. Oct. 4, 1999). In *Dew*, plaintiff Mary Dew had proceeded in a manner similar to the plaintiff in this case, and Judge Payne, nonetheless, concluded that Dew had exhausted state law remedies as

alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice . . . no charge may be filed . . . by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law unless proceedings have been earlier terminated."

required by Title VII. The Box on Dew's EEOC Form 5 was not checked. *See id.* at 6. Dew's EEOC Form 5 contained the following declaration: "I believe that I have been discrimination against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id.* This language, as with the Statement on plaintiff's EEOC Form 5 makes no reference to a violation of state law. The court in *Dew* further recognized that complainants do not draft this language themselves, as "the ... text [on the EEOC Form 5] respecting the source of law for a claim is a computer-produced boilerplate statement entered by the EEOC." *Id.* As with the plaintiff in this case, Dew's EEOC Forms 5 and 212 were forwarded to the VCHR, completed by the VCHR, returned to the EEOC, and the EEOC issued a right-to-sue letter.

Based on the depositions of numerous EEOC and VCHR employees,[5] Judge Payne concluded that, with regard to the Box on EEOC Form 5, "a discrimination charge is not processed differently when the Box is not checked than when the Box is checked." *Id.* at 16. Therefore, "the Box on Form 5 appears to have no significance respecting how a complainant's charge is processed." *Id.* at 17. The Court further indicated, based on the deposition testimony of an EEOC official, that "neither the significance of the pre-printed text adjacent to the Box nor the significance of checking the Box is discussed with complainants by the EEOC investigator." *Id.* Based on this practice, the Court in *Dew* concluded that it would be unwarranted to infer that the failure to check the Box on EEOC Form 5 constituted an affirmative renunciation of state law relief.[6] *See id.*

The determination of whether or not state law is implicated is actually made by a VCHR official based on the factual allegations and substance of the complaint, without regard to whether the Box on the EEOC Form 5 was checked. *See id.* at 17–18. The Court in *Dew* held that based on the factual allegations set forth in the EEOC forms, Dew had commenced proceedings under state law, and, accordingly, the Court had subject matter jurisdiction over Dew's action. *See id.* at 19.

Considering the procedures utilized by the EEOC and the VCHR as a whole, Judge Payne stated, "by virtue of the Agreement, the EEOC sends the charges to the VCHR (as well as the EEOC), the VCHR ascertains whether state law claims are presented. Moreover, the Agreement and the agencies' practices provide for a waiver of jurisdiction by the VCHR after a lapse of 60 days at the latest (and simulta-

---

5. Gloria Underwood's Deposition at 28 "Q: Is there any difference in the way in which EEOC processes a Charge of Discrimination when that box is checked versus when it is not checked? A: No difference."; Patterson Dep. at 61 "Q: If a claimant for some reason does not check that box, does that affect whether or not you follow through with the EEOC? A: No; Q: And why not? A: Because of our Worksharing Agreement. Regardless of whether the box is checked or not, the Worksharing Agreement is what allows us to be able to pursue the charge with the Virginia Council on Human Rights. So it's not really the checking of the box."; Rosalind Hall–Smith, Charge Recipient, Technical Information Supervisor in Richmond EEOC, Deposition at 83–85 "Q: I'm asking you how you interpret a charge that doesn't have the box checked on it; A: Because we process as we would usually process a charge, I interpret—because we process it, I'm interpreting

that they want both their state and federal rights protected. Because we don't change the process. Even though the box may not be checked; basically the process is the same."; Norman Dep. at 13–14 "Q: I am talking about the form being physically delivered from EEOC to the Council. Are you saying that you think that that happens regardless of whether someone checks that box? A: Yes, sir; Q: And what's the basis for your belief that that's the case?; A: Our Worksharing Agreement.".

6. The Court in *Dew* distinguished the factual situation in which a plaintiff fails to check the Box on EEOC Form 5 from *Davis*, where the plaintiff affirmatively stated that he renounced state law procedures. *See id.; see also Davis*, 48 F.3d at 139. Plaintiff never made such a statement in this case.

neously with receipt of the charge by the VCHR at the earliest)." *Id.* at 21. Although Judge Payne held that the procedures utilized by the EEOC and the VCHR as well as the Agreement itself were sufficient to satisfy the requirements of Title VII and were entitled to deference, he criticized them as amounting to "little more than paper-pushing."[7] *Id.* at 23. In *Dew,* Judge Payne denied each of the defendants' motions to dismiss.

In *Dew,* Judge Payne relied heavily on Judge Williams' opinion in *Flippo v. American Home Products, Corp.,* 59 F.Supp.2d 572 (E.D.Va. 1999). In *Flippo,* Judge Williams concluded that, "in Virginia, a written statement of facts lacking any citation to specific state statutes is sufficient to commence proceedings under state law and satisfy Section 706(c)." *Id.* at 578. In support of this conclusion, "worksharing agreements between the EEOC and state deferral agencies should be interpreted to effectuate the intent of these agencies to comply with § 706." *Id.* As recognized in *Flippo,* neither Title VII, state codes or regulations, nor the agencies' Agreement require more than the VCHR's receipt of a plaintiff's complaint as well as all of the information necessary to evaluate the claim under state law. *See id.* at 578. *Dew,* however, carried the holding in *Flippo* a step further, applying it to a factual scenario in which a plaintiff had not checked the Box on the EEOC Form 5.

In *Nash v. D.S. Nash Construction Co.,* 70 F.Supp. 639 (W.D.Va.1999), Judge Moon, in reliance on the opinion in *Dew,* also held that a complainant who had filed a charge with the EEOC and had failed to check the Box on Form 5 had exhausted state law remedies. The plaintiff in *Nash* had filed a charge alleging ADA violations with the EEOC, and even though the Box on his EEOC Form 5 was not checked, his claim was forwarded to the VCHR pursuant to the Worksharing Agreement for fiscal year 1998. *See id.* at 641–42. The VCHR acknowledged receipt of the charge and indicated its intention to not investigate it initially, and plaintiff was issued a notice of right to sue. *See id.* at 642. This factual scenario, as with that present in *Dew,* closely resemble the facts in the present case.

In *Nash,* Judge Moon relies on the opinion in *Dew* for the proposition that "the worksharing agreement, which ensures that charges are automatically forwarded, trumps whatever is entered at the bottom of the form and makes checking the box irrelevant for purposes of EEOC claims filed within Virginia." *Id.* at 642. The court in *Nash* held that the plaintiff did exhaust all available state remedies as his failure to check the Box had no effect of the processing of his claim with the VCHR. *See id.* at 643. Judge Moon also expressed concern that requiring anything greater from complainants would be asking more than either Title VII or the VHRA require, "which is especially inappropriate in the context of a remedial antidiscrimination statute that is designed to be accessible to the layperson." *Id.* (citing *Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972)).

The most recent opinion on this issue is also consistent with Judge Payne's holding in *Dew.* In *Bolinsky v. Carter Machinery Co., Inc.,* 69 F.Supp.2d 842 (W.D.Va.1999), Judge Jones concluded that the failure to check the box on the EEOC Form 5 is

---

7. Judge Payne observed the following with regard to the agencies' procedures: "The procedures followed by the agencies were no doubt convoluted, perhaps even bizarre. The Agreement itself is far from an exemplar of legal drafting. The Agreement and the procedures, as the defendants rightly allege, amount to little more than paper-pushing. And, from the record here, it appears that, indeed, neither the EEOC nor the VCHR is equipped to do well the job contemplated by the statute. That said, however, bureaucratic misadministration is certainly no reason to interpose, as a bar to Title VII relief, the very procedures adopted by the responsible agencies as the means to fulfill their statutory mandates." *Id.* at 23.

"irrelevant to the commencement and termination of [a complainant's] state law claims under the worksharing agreement." *Id.* at 847. Judge Jones also agreed with the recent district court opinions in Virginia with regard to the fact that a complainant's failure to explicitly reference state law is not determinative. "A plaintiff filing a discrimination charge need only set forth facts that would be sufficient to establish a state law claim in order to exhaust her state law remedies under Title VII." *Id.* at 847–48. Accordingly, in *Bolinsky,* the defendant's motion to dismiss was denied.

Judge Kiser's opinion in *Grimes v. Canadian American Transportation, C.A.T. (U.S.), Inc.,* 72 F.Supp.2d 629 (W.D.Va. 1999), is also relevant to the facts of this case. Grimes filed her charge with the EEOC, and while the Box on her EEOC Form 5 was checked, she did not cite to the code section of the VHRA or any other Virginia law in either her charge or her supporting affidavit, nor did Grimes independently initiate proceedings with the VCHR. *See id.* at 633. The pertinent language in the 1997 Agreement relied upon by the Court is language that is also contained in the 1995 Agreement relied on by the plaintiff in this case. Although the 1997 Agreement also includes additional language cited from the 1998 Agreement relied on in *Dew,* the Court in *Grimes* did not refer to this added language, and ruled on the basis of the language that is present in the 1995 Agreement as well. *See id.* at 632–33. Judge Kiser held that "a plain reading of the worksharing agreement supports an interpretation by which a charge filed initially with one agency is, pursuant to the agreement, considered simultaneously filed with the other." *Id.* at 633.

Judge Kiser further concluded that the mere filing with the VCHR by means of the receipt of the EEOC Forms 5 and 212, with no further action by the plaintiff,

constitutes an exhaustion of state remedies. *See id.* With regard to the factual situation in *Grimes,* as in this case, centering around charges of sexual discrimination, Judge Kiser noted that, "[g]iven the fact that Virginia lacks a common law cause of action for sexual discrimination, the entire extent of her 'remedy' with the state was the possibility that the state might investigate and mediate the claim. Therefore, once she had notified the appropriate agency of the existence of an allegation, the only body able to act on her behalf was that agency." *Id.* at 633. Judge Kiser, similarly to Judge Payne, expressed concern about placing procedural hurdles between unsophisticated plaintiffs and their access to federal courts and ultimately concluded that "by setting forth facts that would establish a possible Title VII claim, [a complainant] has also set forth facts which indicate a possible violation of the VHRA, and would give rise to VCHR authority to investigate and pursue the claim on her behalf if it so chose." *Id.* at 634.

In addition to the cases discussed above, several other district courts have been presented with the issue of whether filing with the EEOC constitutes the exhaustion of state law remedies, and all but one court has denied the respective defendants' motions to dismiss for lack of jurisdiction. *See Puryear v. County of Roanoke,* 71 F.Supp.2d 551 (W.D.Va. 1999) (denying defendant's motion to dismiss); *Capps v. City of Lynchburg,* 67 F.Supp.2d 589 (W.D.Va. 1999) (denying defendant's motion to dismiss); *Harris v. The TJX Companies, Inc.,* 60 F.Supp.2d 562 (W.D.Va. 1999) (denying defendant's motion to dismiss). *But see Walker v. Electrolux Corp.,* 55 F.Supp.2d 501 (W.D.Va. 1999) (granting defendant's motion to dismiss).

The factual scenario in this case most closely resembles those before Judge Payne in *Dew,* Judge Moon in *Nash,* and Judge Jones in *Bolinsky.* The only major factual difference between the procedures

followed with respect to *Dew, Nash,* and *Bolinsky's* claims and the plaintiff's claim in the present case, is that *Dew, Nash,* and *Bolinsky* involved 1998 Worksharing Agreements, while the filing of charges in this case occurred under a 1995 Worksharing Agreement. A deposition taken from Roxie Raines Kornegay on August 9, 1999 refers to the substance of the 1995 Agreement. Ms. Kornegay is the Human Rights Director for the Commonwealth of Virginia, and she works with the VCHR. She was also the VCHR representative who signed plaintiff's Form 212 and returned it to the EEOC. When Ms. Kornegay was asked, "is it fair to say that the language in the '98 agreement is the same as the language in the '95 agreement?"; she replied, "yes." Kornegay Dep. at 29. In addition to this comparison of the two agreements, the Court in *Grimes* relied solely on the portions of the 1997 Agreement that were also present in the 1995 Agreement. No reference was made to the language that had been added to the agreement after 1995,[8] indicating that the addition of this language did not alter the meaning of the Agreement.

In light of the holdings of the District Courts in *Dew, Nash,* and *Bolinsky,* it is the opinion of this Court that the defendants' motion to dismiss should be denied. The plaintiff has met her burden under 42 U.S.C. § 2000e–5(c). Neither a failure to check the Box on the EEOC Form 5 nor a failure to specifically allege a violation of state law divests a federal court of jurisdiction to hear Title VII claims. It was the explicit intent of the EEOC and the VCHR in establishing the procedures for the processing of charges "to provide individuals with an efficient procedure for their grievances under appropriate State or Federal law." Worksharing Agreement for Fiscal Year 1995, at ¶ I–B. To require of complainants anything more than the plaintiff has done in this case would place far too great a burden on a layperson in the plaintiff's situation. *See Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).

*Conclusion*

For the reasons set forth above, defendants' motion to dismiss is **DENIED**. Furthermore, because this Court finds that this decision involves a controlling issue of law over which reasonable judges may differ, and that an immediate appeal will best serve the interests of judicial economy and avoid unnecessary expense to the parties if decided by the Court of Appeals on an Interlocutory basis, this Court hereby **CERTIFIES** this interlocutory decision as appealable under 28 U.S.C. § 1292(b). Accordingly, further proceedings are **STAYED** until the Court of Appeals has had the opportunity to address the issues presented by this case.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

It is so **ORDERED**.

---

8. The relevant language added subsequent to the 1995 Agreement is as follows: "EEOC's receipt of charges on the [VCHR]'s behalf will automatically initiate proceedings of both EEOC and the [VCHR] for the purposes of Section 706(c) and (e)(1) of Title VII."