William Eugene **BOLINSKY**, Plaintiff,

v.

**CARTER MACHINERY COMPANY, INC.,** Defendant.

No. 2:99CV00047.

United States District Court, W.D. Virginia, Big Stone Gap Division.

Oct. 14, 1999.

Carl E. McAfee, McAfee Law Firm, P.C., Norton, VA, for Plaintiff.

Thomas M. Winn, III, Woods, Rogers & Hazelgrove, P.L.C., Roanoke, VA, for Defendant.

## OPINION AND ORDER

JONES, District Judge.

The question in this case is whether the plaintiff's charge of discrimination, filed with the EEOC, was sufficient to exhaust

his state administrative remedies pursuant to a worksharing agreement between the EEOC and the state fair employment practices agency, even though the plaintiff did not specifically request that the state agency consider the charge and did not specifically cite a violation of state law. Based on a plain reading of the worksharing agreement, I hold that the state waived investigation of the plaintiff's charge and thus there was sufficient exhaustion of state remedies.

## I.  FACTUAL BACKGROUND.

The plaintiff, William Eugene Bolinsky, was employed by the defendant, Carter Machinery Company, Inc., as a technical inspector. He underwent back surgery for herniated disks in 1994, and after returning to work, reinjured his back in 1997, resulting in certain permanent physical restrictions. He contends that on June 13, 1998, he was fired from his job.

On August 25, 1998, Bolinsky filed with the Equal Employment Opportunity Commission ("EEOC") a written charge of discrimination, on EEOC Form 5.[1] The particulars of the charge were stated by him as follows:

> I was hired by Carter Machinery as a mechanic in April, 1988. I continued working as a technical inspector until June 13, 1998. I was discharged on June 13, 1998.
>
> I received a telephone call from Sam Renfro, store supervisor, who advised me that I no longer had a job. I met with officials at 3:00 p.m. at which time Wayne Lafon, Janice Henniger and Sam Renfro advised me that due to the fact that I had had a prior back injury that they could not keep me on the payroll. It is my belief that I was discharged in violation of the Americans With Disabilities Act of 1990, as amended.

Beside a block at the bottom of Form 5 is the following language:

> I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I

change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

Bolinsky did not check this block.

The EEOC eventually declined to pursue the matter further and on May 12, 1999, Bolinsky filed the present action in this court, asserting a claim under the Americans with Disabilities Act, 42 U.S.C.A. §§ 12101–12213 (West 1995 & Supp.1999) ("ADA"). The defendant filed a motion to dismiss for lack of subject matter jurisdiction on the ground that Bolinsky had not exhausted his state remedies as required by section 706(c) of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–5(d) (West 1994).

The parties have briefed and argued the issues and the motion to dismiss is ripe for decision.

## II.  ANALYSIS.

### A.  EXHAUSTION OF STATE REMEDIES.

The ADA has incorporated certain procedural requirements of Title VII. *See* 42 U.S.C.A. § 12117(a) (West 1995). One such requirement is contained in section 706(c) of Title VII:

> In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice ... no charge may be filed ... by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless proceedings have been earlier terminated....

42 U.S.C.A. § 2000e–5(d) (West 1994).

█ Unless the requirements of section 706(c) have been complied with, the federal courts are without subject matter jurisdiction over the claim. *See Davis v. North Carolina Dep't of Correction*, 48 F.3d 134,

---

1.  *See* Def.'s Mot. Dismiss, Ex. 1.

136–37 (4th Cir.1995). The defendant has thus properly raised the exhaustion issue in a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(1).

■ It is settled that the plaintiff bears the burden of persuasion if subject matter jurisdiction is challenged under rule 12(b)(1), *see Williams v. United States,* 50 F.3d 299, 304–05 (4th Cir.1995), and the court may consider matters outside of the pleadings. *See Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982).

Until recently, some thought that the state exhaustion requirement of section 706(c) was inapplicable in Virginia, on the ground that Virginia did not have a fair employment practices agency, also known as a "deferral" agency. All of the cases from this court had so held,[2] as well as an unpublished Fourth Circuit decision.[3] In *Tinsley v. First Union National Bank,* 155 F.3d 435 (4th Cir.1998), decided eight days after Bolinsky filed his charge with the EEOC, the Fourth Circuit first squarely held that the Virginia Council on Human Rights ("VCHR") was indeed a proper deferral agency, a position espoused by the EEOC.

It is uncontested that the only administrative charge of discrimination filed by Bolinsky was the one he filed with the EEOC and therefore the issue is whether that charge also served to exhaust his state remedies with the VCHR. This issue, in varying factual patterns, has been the subject of a number of recent lower court opinions in Virginia, in light of *Tinsley's* clarification of the status of the VCHR.[4] Of course, in the present case, I have had the benefit of the reasoning of those opinions, as well as the parties' views.

## B. THE WORKSHARING AGREEMENT.

Long before *Tinsley,* the EEOC and the VCHR entered into a "worksharing agreement" in order to coordinate the efficient resolution of employment discrimination charges between the two agencies. The agreement establishes streamlined procedures for receiving filings, processing charges, exchanging information, and resolving claims between the two agencies. The agreement provides that the EEOC and the VCHR are agents for each other for the purpose of receiving and drafting charges and states that the "EEOC's receipt of charges on the [VCHR's] behalf will automatically initiate the proceedings of both EEOC and the [VCHR] for the purposes of Section 706(c) and (e)(1) of Title VII."[5]

---

2. *See Kidwell v. Sheetz, Inc.,* 996 F.Supp. 552, 554 (W.D.Va.1998); *McGuire v. Virginia,* 988 F.Supp. 980, 986 (W.D.Va.1997); *Young v. Sheetz, Inc.,* 987 F.Supp. 496, 499 (W.D.Va. 1997); *Tokuta v. James Madison Univ.,* 977 F.Supp. 763, 764 (W.D.Va.1997), *rev'd,* 166 F.3d 334, 1998 WL 811787 (4th Cir.1998) (unpublished); *Dorsey v. Duff's Motel, Inc.,* 878 F.Supp. 869, 870 (W.D.Va.1995). *But see Bolt v. Norfolk Southern Corp.,* 22 F.Supp.2d 512, 515–16 (E.D.Va.1997); *Holland v. First Va. Banks, Inc.,* 744 F.Supp. 722, 725 (E.D.Va.1990).

3. *Childress v. Appalachian Power Co.,* 155 F.3d 558, 1998 WL 417278, at *1 (4th Cir. 1998) (unpublished), *cert. denied,* — U.S. ——, 119 S.Ct. 1507, 143 L.Ed.2d 659 (1999). Unpublished opinions are not binding precedent in this circuit. *See* 4th Cir. R. 36(c); *United States v. Ruhe,* 191 F.3d 376, 1999 WL 674758, at *13 (4th Cir.1999); *Burns v. City of Winston–Salem (In re Members Warehouse, Inc.),* 991 F.2d 116, 119 n. 2 (4th Cir.1993).

4. *See Dew v. Nabisco, Inc.,* Civil Action No. 3:99cv353 (E.D.Va. Oct. 4, 1999) (Payne, J.); *Puryear v. County of Roanoke,* —— F.Supp.2d ——, No. 7:99CV00351 (W.D.Va. Sept. 20, 1999) (Kiser, J.); *LaFranca v. Wal–Mart Stores, Inc.,* Civil Action No. 98–0372–R (W.D.Va. Aug. 31, 1999) (Turk, J.); *Capps v. City of Lynchburg,* 67 F.Supp.2d 589 (W.D.Va. 1999) (Moon, J.); *Flippo v. American Home Prods. Corp.,* 59 F.Supp.2d 572 (E.D.Va.1999) (Richard L. Williams, J.); *Grimes v. Canadian American Transp. C.A.T. (U.S.), Inc.,* Civil Action No. 98–0409–R, —— F.Supp.2d —— (W.D.Va.1999) (Kiser, J.); *Harris v. TJX Companies, Inc.,* 60 F.Supp.2d 562 (W.D.Va.1999) (Crigler, J.); *Walker v. Electrolux Corp.,* 55 F.Supp.2d 501 (W.D.Va.1999) (Glen M. Williams, J.).

5. Worksharing Agreement Between Virginia Council on Human Rights and EEOC (hereinafter "Virginia Worksharing Agreement") § II.A. Although the full text of the Virginia Worksharing Agreement has not been submit-

The agreement provides that each agency will process all of the Title VII and ADA charges it originally receives. *See id.* § III.A. And, although section 706(c) stipulates that states have exclusive jurisdiction over discrimination charges for sixty days, the worksharing agreement contains a waiver of this jurisdiction. The agreement states:

> For charges originally received by the EEOC and/or to be initially processed by the EEOC, the [VCHR] waives its right of exclusive jurisdiction to initially process such charges for a period of 60 days for the purpose of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day.

Virginia Worksharing Agreement § III.A.1.

The EEOC's regulations allow the agency to enter into worksharing agreements with state agencies for receiving and processing claims. *See* 29 C.F.R. § 1626.10 (1998). The regulations stipulate that when a worksharing agreement is in effect, claims received by one agency "shall be deemed received by the other agency...." *Id.* at (c). Thus, by filing a claim with the EEOC, a plaintiff commences proceedings in both the EEOC and the VCHR.

■ The Supreme Court, in *EEOC v. Commercial Office Products Co.,* 486 U.S. 107, 109, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988), recognized the use of worksharing agreements to efficiently process discrimination claims. The Court addressed the issue of the states' sixty-day period of exclusive jurisdiction and held that a state could waive this right. *See id.* at 117, 108 S.Ct. 1666. Additionally, the Court held that a state's waiver of exclusive jurisdiction terminates the agency's proceedings for purposes of section 706(c). *See id.* at 125, 108 S.Ct. 1666. The Court explained its reasoning:

> Nothing in the waiver provisions of the worksharing agreements impinges on the opportunity of the States to have an exclusive 60-day period for processing a discrimination charge. The waiver of that opportunity in specified instances is a voluntary choice made through individually negotiated agreements....

*Id.* at 117, 108 S.Ct. 1666. Thus, the Court held that a state's affirmative waiver of exclusive jurisdiction in a specific case will constitute a termination of state proceedings.

In *Commercial Office Products Co.,* the state agency had executed a waiver separate from the worksharing agreement, so the Supreme Court did not determine whether a waiver contained in a worksharing agreement is self-executing. *See Commercial Office Prods. Co.,* 486 U.S. at 113, 108 S.Ct. 1666. Although the Supreme Court did not address this issue, numerous circuit courts have determined that waivers contained in worksharing agreements automatically terminate state proceedings upon filing with the EEOC.

■ The Seventh Circuit has held that if a worksharing agreement contains a waiver of exclusive jurisdiction, a filing with the EEOC simultaneously commences and terminates state agency action. First in *Sofferin v. American Airlines, Inc.,* 923 F.2d 552 (7th Cir.1991), and again in *Hong v. Children's Memorial Hospital,* 936 F.2d 967 (7th Cir.1991), *cert. denied,* 511 U.S. 1005, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994), the court concluded that a "workshare agreement can alone effect both initiation and termination of the state proceedings and that, as a result, plaintiffs may file with the EEOC without first filing with the [state agency]." *Hong,* 936 F.2d at 971. Later, in *Marlowe v. Bottarelli,* 938 F.2d 807 (7th Cir.1991), the court expanded its ruling and held that a worksharing agreement's waiver is self-executing and

ted to the court by the plaintiff, the relevant provisions of it have been agreed to by the parties. The agreement is a public record of which I may take judicial notice. *See* Fed. R.Evid. 201; *Caha v. United States,* 152 U.S.

211, 221–22, 14 S.Ct. 513, 38 L.Ed. 415 (1894). It appears at <http://www.chr.state.va.us/workshare1.html>.

terminates state action instantaneously upon filing with the EEOC. *Marlowe*, 938 F.2d at 814.

The Third, Fifth, Eighth, Ninth, and Eleventh Circuits have reached similar conclusions about the effect of waivers contained in worksharing agreements. *See Trevino–Barton v. Pittsburgh Nat'l Bank*, 919 F.2d 874, 879 (3d Cir.1990); *Griffin v. City of Dallas*, 26 F.3d 610, 612–13 (5th Cir.1994); *Worthington v. Union Pac. R.R.*, 948 F.2d 477, 482 (8th Cir.1991); *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1479–80 (9th Cir.1989); *Griffin v. Air Prods. & Chems., Inc.*, 883 F.2d 940, 943 (11th Cir. 1989).

▮ I find the reasoning of these courts persuasive. When the VCHR waived its right to sixty days of exclusive jurisdiction, it manifested its intent to terminate proceedings in any case filed with the EEOC. *See* Virginia Worksharing Agreement § III.A.1. No affirmative act by either agency is required, under the worksharing agreement or under Virginia law, to terminate the proceedings. Therefore, I hold that because the plaintiff's filing with the EEOC automatically commenced and terminated the state proceedings on his charge, his filing with the EEOC was a sufficient exhaustion of his state law remedies.

With respect to Bolinsky's failure to check the box at the bottom of the charge form, I conclude that it is irrelevant to the commencement and termination of his state law claims under the worksharing agreement. The charge form, EEOC Form 5, is a standard form in use across the country.[6] The Virginia Worksharing Agreement contains no requirement that a claimant check the box. The agreement is detailed, but it nowhere indicates that checking the box is a prerequisite to the VCHR's jurisdiction over a discrimination charge. Instead, the agreement expressly stipulates that the EEOC's receipt of charges automatically commences proceedings with the VCHR. *See* Virginia Worksharing Agreement § II.A. While failure to check the box might be relevant under some worksharing agreements, it is irrelevant under the plain text of Virginia's agreement.[7]

Since the Virginia Worksharing Agreement does not require a charging party to indicate, by checking the box on Form 5 or otherwise, that she wishes Virginia's waiver of filing to be effective, it would be nonsensical to require the charging party to check the box in order to effectively exhaust state remedies. In fact, a reasonable claimant might well believe that by checking the box, she was demanding that the worksharing agreement not be applied in her case, and that actual state filing be accomplished, contrary to the plain words of the agreement.

Because I do not find that federal law, Virginia law, or the worksharing agreement requires that a claimant check the box, I hold that Bolinsky's failure to check the box does not preclude an assertion of federal jurisdiction over his claim.

C. LACK OF REFERENCE TO STATE LAW.

▮ The fact that the plaintiff did not explicitly refer to state law also is not determinative. I agree with the recent district court opinions in Virginia [8] that a

6. *See, e.g.,* Laurie M. Stegman, Note, *An Administrative Battle of the Forms: The EEOC's Intake Questionnaire and Charge of Discrimination,* 91 Mich. L.Rev. 124, 126 & n. 18 (1992) (discussing standard EEOC filing procedures).

7. In a recent opinion, Judge Payne held that a claimant's failure to check the box was irrelevant to the jurisdictional issue. *See Dew v. Nabisco, Inc.*, Civil Action No. 3:99cv353, at 16–18 (E.D.Va. Oct. 4, 1999). The evidence in *Dew* demonstrates that the VCHR and EEOC process claims regardless of whether or not the claimant checked the box. *See id.* at 19 ("[T]he record shows that it is from the factual allegations set forth on the EEOC forms that the VCHR assesses the claim under the [VHRA].... That is true without regard to whether the box on the EEOC Form 5 is checked.").

8. *See Dew v. Nabisco, Inc.,* Civil Action No. 3:99cv353 (E.D.Va. Oct. 4, 1999); *Puryear v.*

plaintiff filing a discrimination charge need only set forth facts that would be sufficient to establish a state law claim in order to exhaust her state remedies under Title VII.[9]

The defendant argues that the Fourth Circuit's ruling in *Davis v. North Carolina Department of Correction,* 48 F.3d 134 (4th Cir.1995), mandates an explicit reference to state law. *Davis,* however, dealt with a situation different from the one presented here. The issue in *Davis* was whether the fact that the EEOC had referred the claim to the state agency would constitute a commencement of proceedings under state law. *See id.* at 139. The plaintiff in *Davis,* unlike Bolinsky, repeatedly insisted that he had brought only a federal claim. Noting that the case was "something of an aberration," the court concluded that where "a complainant steadfastly maintains that he has brought only a [federal] claim and the state referral agency unequivocally addresses only that claim, proceedings under state law have not commenced for purposes of section 2000e–5(d)." *Id.*

Bolinsky does not assert that he has brought only a federal charge of discrimination. To the contrary, he argues that the charge he filed with the EEOC asserted both federal and state discrimination claims.[10] For the reasons discussed below, I agree that his charge did assert a discrimination claim under state law.

Virginia law provides that a plaintiff filing a discrimination claim with the VCHR is required to provide only a written statement of facts describing generally the alleged discrimination and identifying the parties to the action. *See* 22 Va. Admin. Code § 25–10–50(B) (1999). The terms of the worksharing agreement also do not require a specific citation of state law. Because Bolinsky's charge contains facts that are sufficient to raise a claim under Virginia law, as well as the ADA, I hold that he commenced state law proceedings for the purposes of section 706(c).[11]

### III. CONCLUSION.

For the foregoing reasons, it is **OR-DERED** that the motion to dismiss (Doc. No.2) is denied.

---

*County of Roanoke,* No. 7:99CV00351, —— F.Supp.2d —— (W.D.Va. Sept. 20, 1999); *LaFranca v. Wal–Mart Stores, Inc.,* Civil Action No. 98–0372–R (W.D.Va. Aug. 31, 1999); *Capps v. City of Lynchburg,* No. 6:99CV0048, 67 F.Supp.2d 589 (W.D.Va.1999); *Flippo v. American Home Prods. Corp.,* No. Civ.A. 398CV804, 1999 WL 606892 (E.D.Va. Aug.9, 1999); *Grimes v. Canadian American Transp. C.A.T. (U.S.), Inc.,* —— F.Supp.2d —— (W.D.Va.1999). *But see Walker v. Electrolux Corp.,* 55 F.Supp.2d 501 (W.D.Va.1999).

**9.** The defendant cites *Dodge v. Philip Morris, Inc.,* 175 F.3d 1014, 1999 WL 162955 (4th Cir.1999) (unpublished), as support for the proposition that a plaintiff must explicitly include a state law claim to satisfy the prerequisites for federal jurisdiction. Although *Dodge* is on point, because unpublished opinions are not binding precedent in this circuit and because I do not find *Dodge* to be persuasive, I respectfully decline to follow it.

**10.** *See* Pl.'s Mem. in Opp'n to Def.'s Mot. Dismiss 9–11.

**11.** In oral argument, the defendant expressed doubt as to whether the facts sets forth in the charge raise a claim under the state law, aside from the lack of specific citation to any such law. However, the Virginia Human Rights Act, Va.Code Ann. §§ 2.1–714 to 725 (Michie 1995 & Supp.1999), specifically defines discrimination based on disability in violation of state or federal statute as an "unlawful discriminatory practice" which may be investigated by the VCHR. *See* Va.Code Ann. §§ 2.1–716, –720(6). The Virginians with Disabilities Act, Va.Code Ann. §§ 51.5–40 to 46 (Michie 1998), makes unlawful discrimination in employment "solely" because of a disability. Va.Code Ann. § 51.5–41(A). While this may impose a higher burden than the Fourth Circuit has required under, the ADA, *see Baird v. Rose,* 192 F.3d 462, 468 (4th Cir.1999) (holding that plaintiff may recover under ADA if "disability was a motivating cause—as opposed to the sole cause—of discrimination"), a fair reading of Bolinsky's charge indicates that he claimed that he had been fired solely because of his back problems.