Nancy C. **MORRIS,** Plaintiff,

v.

**WASTE MANAGEMENT OF VIRGINIA, INC.,** d/b/a **Waste Management of Hampton Roads,** Defendant.

No. Civ.A. 299cv385.

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 12, 1999.

---

**538**

Scott M. Reed, Virginia Beach, VA, for plaintiff.

Lawrence P. Postol, Seyfarth, Shaw, Fairweather, Washington, DC, for defendants.

### OPINION AND ORDER

FRIEDMAN, District Judge.

On June 15, 1999, defendant filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A hearing on this motion was originally set for July 14, 1999, a final pretrial conference was set for October 8, 1999, and a jury trial was scheduled for November 8, 1999. On August 31, 1999, this Court entered a stipulated order staying this case except for the pending Motion to Dismiss and vacating the final pretrial and trial dates. For the reasons stated below, the defendant's Motion to Dismiss is **DENIED.**

### Factual and Procedural Background

Plaintiff, a female United States citizen over the age of forty, was employed by defendant from September 1995 until December 10, 1997. (Complaint ¶ 4). She alleges that during this period, defendant, by and through its authorized management and supervisory employees and agents "intentionally and deliberately engaged in unlawful, discriminatory and differential employment practices against Plaintiff on account of her gender (female), in violation of the [Civil Rights] Act, Sections 2000e–2(a), (d), (h) and (m) and 2000e–16, Title 42, United States Code," (Complaint ¶ 5), and "on account of her age, in violation of the ADEA, 29 U.S.C. § 623." (Complaint ¶ 11). She alleges that defendant's unlawful practices included: "the imposing upon Plaintiff differential and discriminatory standards of performance and behavior; the imposing upon Plaintiff of arbitrary, unreasonable and harsh discipline; creating and maintaining a hostile work environment for Plaintiff; and terminating Plaintiff's employment." (Complaint ¶¶ 5, 11). The defendant has moved for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that the plaintiff has failed to exhaust state law remedies as required by Title VII. The Court construes defendant's motion for dismissal as one pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

### I. Worksharing Agreement Between the EEOC and the VCHR

In addition to creating the substantive rights set forth in Title VII, Congress empowered the Equal Employment Opportunity Commission ("EEOC") with the authority to enforce Title VII by, inter alia, acting on individual complaints. *See* 42 U.S.C. § 2000e–4. The EEOC has been vested with the power "to cooperate with,

and with their consent, utilize regional, State, local, and other agencies, both public and private, ..." 42 U.S.C. § 2000e–4(g)(1). The EEOC has entered into a Worksharing Agreement ("Agreement") with the Virginia Council on Human Rights ("VCHR")[1] in order "to provide individuals with an efficient procedure for obtaining redress for their grievances under appropriate State or Federal laws." Worksharing Agreement Between Virginia Council on Human Rights and Equal Employment Opportunity Commission for Fiscal Year 1998, ¶ I–B [hereinafter 1998 Worksharing Agreement]. In the Agreement, each agency designates the other as its agent for the purposes of receiving and drafting charges, and the "EEOC's receipt of charges on the [VCHR's] behalf will automatically initiate the proceedings of both EEOC and the [VCHR] for the purposes of Section 706(c) and (e)(1) of Title VII." *Id.* at ¶ II–A. The Agreement further states that "[f]or charges originally received by the EEOC and/or to be initially processed by the EEOC, the [VCHR] waives its right of exclusive jurisdiction to initially process such charges for a period of 60 days for the purposes of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day." *Id.* at ¶ III–A.

When one agency initially receives a charge, the Agreement provides that it will communicate the charge to the other. *See id.* at ¶¶ II–C. The forms typically used to communicate that information are the Charge of Discrimination Form 5 ("EEOC Form 5") and a Transmittal Form 212 ("EEOC Form 212"). The Form 5, which is prepared by either an EEOC or VCHR agent and signed by the complainant upon the agent's receipt of the relevant information from the complainant, notifies the oth-

er agency of the nature of the charge filed by the particular complainant. The Form 212 is utilized to decide which agency will pursue investigation of the charge. With the Form 212, the intake agency (the agency with whom the complainant initially filed the charge), completes and signs the upper half of the form. The form is then sent to the other agency in order for the bottom half of the form to be completed, signed, and returned to the intake agency.

This Agreement, therefore, is authorized by Title VII and by Virginia law, and pursuant to it, the EEOC and VCHR have established a practice of regularly communicating the fact the charges have been made and considering the charges to have been "dual filed" with both signatory agencies once they have been filed with one of them. *See Smith v. Center Ford, Inc.,* 71 F.Supp.2d 530, 532 (E.D.Va.1999). The Agreement, both at the time the plaintiff filed her charge (fiscal year 1998) and currently, is relied upon by the agencies as the definition of the agencies' working relationship and the practices which they follow when a complainant makes a charge of employment discrimination.

On June 5, 1998, plaintiff filed a complaint against her employer in the Norfolk, Virginia office of the EEOC. Based on answers given to the EEOC by the plaintiff, the EEOC staff prepared an EEOC Form 5 which plaintiff signed under penalty of perjury on June 5, 1998. The EEOC Form 5 briefly sets forth the essential facts of plaintiff's claim and contains the declaration: "I believe that the termination of my employment was on account of my gender (female) and age (43), in violation of the Title VII of the Civil Rights Act and the Age Discrimination in Employment Act." The recited text re-

1. The VCHR is a state administrative agency that is empowered, pursuant to the Virginia Human Rights Act, to receive, process and investigate claims of employment discrimination occurring within Virginia filed against employers employing more than five but less than fifteen persons. *See* Va.Code Ann.

§ 2.1–714, *et seq.* The VCHR is likewise authorized to "enter into cooperative worksharing agreements with federal agencies or local commissions, including the deferral of complaints of discrimination to federal agencies or local commission." Va.Code Ann. § 2.1–720.5.

specting the source of law for a claim is a computer-produced boilerplate statement entered by the EEOC. *See Smith,* at 532. Plaintiff's Form 5 contained the preprinted textual statement: "I want this charge filed with both the EEOC and the State or local Agency, if any." There is no box adjacent to the text for a complainant to check in order to indicate an affirmation of this statement.[2]

On June 15, 1998, the EEOC forwarded the EEOC Form 5 and EEOC Form 212 to the VCHR. The EEOC Form 212 for plaintiff's complaint, which was completed and signed by the EEOC, reflects that the charge of employment discrimination initially was received by the EEOC. According to the Form 212, "pursuant to the worksharing agreement," the charge was to be initially investigated by the EEOC. The bottom half of the form was then completed by the VCHR (signed by Ms. Kornegay, the VCHR Director) thereby "acknowledg[ing] receipt of the referenced charge and indicat[ing] [the VCHR's] intention not to initially investigate the charge." On June 19, 1998, the VCHR returned plaintiff's forms to the EEOC and, on December 9, 1998, the EEOC issued plaintiff a right-to-sue letter. Plaintiff timely filed this action on March 12, 1999.

### Analysis

Defendant asserts that plaintiff did not satisfy the administrative requirements of Title VII which are the essential predicate to confer jurisdiction upon the EEOC, and, therefore this Court lacks subject matter jurisdiction over plaintiff's claim. As recognized by a series of recent District Court opinions, including one by this Court, this jurisdictional challenge stems from two decisions by the United States Court of Appeals for the Fourth Circuit, interpreting provisions of Title VII respecting the role of state agencies in Title VII's enforcement scheme.

In *Tinsley v. First Union National Bank,* 155 F.3d 435 (4th Cir.1998), the Fourth Circuit held that because the VCHR is a deferral agency, Virginia is a "deferral state" within the meaning of Title VII. *See id.* at 441–42. In *Davis v. North Carolina Department of Correction,* 48 F.3d 134 (4th Cir.1995), the Court of Appeals held that in a deferral state, the complaining party is required by Title VII to have first commenced proceedings with the deferral agency "under State or local law" before the complainant can proceed in the EEOC or file an action over which a federal court has subject matter jurisdiction. *See id.* at 138; *see also* 42 U.S.C. § 2000e–5(c).[3] In an unpublished opinion, *Dodge v. Philip Morris, Inc.,* No. 99–1968, 1999 WL 162955 (4th Cir. March 25, 1999), the Fourth Circuit held that because a plaintiff had failed to include a state law claim, she had not commenced proceedings under state law, and the Court, therefore, lacked subject matter jurisdiction. While this unpublished opinion has been widely cited, the Fourth Circuit in *Dodge* explicitly stated that it was not deciding "whether the filing with the EEOC satisfied the requirement of commencing state proceedings with the VCHR." *Id.* at *2. While *Dodge* does not serve as precedent, it is informative.

The facts present in this case are similar to those in a consolidated case before Judge Payne in *Dew v. Nabisco, Inc. et al.,* Nos. 3:99cv353, 3:99cv117, 3:99cv188

2. Other examples of the EEOC Form 5 contain a box (the "Box") next to the preprinted textual statement for a complainant to check in order to affirm the statement. *See, e.g., Smith,* at 532.

3. 42 U.S.C. § 2000e–5(c) states: "[i]n the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice ... no charge may be filed ... by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law unless proceedings have been earlier terminated."

(E.D.Va. Oct. 4, 1999). In *Dew*, plaintiff Mary Dew had proceeded in a manner similar to the plaintiff in this case, and Judge Payne, nonetheless, concluded that Dew had exhausted state law remedies as required by Title VII. The Box on Dew's EEOC Form 5 was not checked. *See id.* at 6. As plaintiff's EEOC Form 5 in this case did not even contain a Box, the relevance of checking the Box in not an issue. With regard to the Form 5, plaintiff's desire to have her charge forwarded to the VCHR is construed as automatically affirmative in nature. Dew's EEOC Form 5 contained the following declaration: "I believe that I have been discrimination against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id.* This language, as with the Statement on plaintiff's EEOC Form 5 makes no reference to a violation of state law. The court in *Dew* further recognized that complainants do not draft this language themselves, as "the ... text [on the EEOC Form 5] respecting the source of law for a claim is a computer-produced boilerplate statement entered by the EEOC." *Id.* As with the plaintiff in this case, Dew's EEOC Forms 5 and 212 were forwarded to the VCHR, completed by the VCHR, returned to the EEOC, and the EEOC issued a right-to-sue letter.

The determination of whether or not state law is implicated is actually made by a VCHR official based on the factual allegations and substance of the complaint. *See id.* at 17–18. The Court in *Dew* held that based on the factual allegations set forth in the EEOC forms, Dew had commenced proceedings under state law, and, accordingly, the Court had subject matter jurisdiction over Dew's action. *See id.* at 19.

Considering the procedures utilized by the EEOC and the VCHR as a whole, Judge Payne stated, "by virtue of the Agreement, the EEOC sends the charges to the VCHR (as well as the EEOC), the VCHR ascertains whether state law claims are presented. Moreover, the Agreement and the agencies' practices provide for a waiver of jurisdiction by the VCHR after a lapse of 60 days at the latest (and simultaneously with receipt of the charge by the VCHR at the earliest)." *Id.* at 21. Although Judge Payne held that the procedures utilized by the EEOC and the VCHR as well as the Agreement itself were sufficient to satisfy the requirements of Title VII and were entitled to deference, he criticized them as amounting to "little more than paper-pushing." [4] *Id.* at 23. In *Dew*, Judge Payne denied each of the defendants' motions to dismiss.

In *Dew*, Judge Payne relied heavily on Judge Williams' opinion in *Flippo v. American Home Products, Corp.*, 59 F.Supp.2d 572 (E.D.Va. 1999). In *Flippo*, Judge Williams concluded that, "in Virginia, a written statement of facts lacking any citation to specific state statutes is sufficient to commence proceedings under state law and satisfy Section 706(c)." *Id.* at 8. In support of this conclusion, "worksharing agreements between the EEOC and state deferral agencies should be interpreted to effectuate the intent of these agencies to comply with § 706." *Id.* As recognized in *Flippo*, neither Title VII, state codes or regulations, nor the agencies' Agreement require more than the VCHR's receipt of a plaintiff's complaint as well as all of the information necessary to evaluate the claim under state law. *See id.* at 10. *Dew*, however, carried the holding in *Flip-*

---

4. Judge Payne observed the following with regard to the agencies' procedures: "The procedures followed by the agencies were no doubt convoluted, perhaps even bizarre. The Agreement itself is far from an exemplar of legal drafting. The Agreement and the procedures, as the defendants rightly allege, amount to little more than paper-pushing. And, from the record here, it appears that, indeed, neither the EEOC nor the VCHR is equipped to do well the job contemplated by the statute. That said, however, bureaucratic misadministration is certainly no reason to interpose, as a bar to Title VII relief, the very procedures adopted by the responsible agencies as the means to fulfill their statutory mandates." *Id.* at 23.

*po* a step further, applying it to a factual scenario in which a plaintiff had not checked the Box on the EEOC Form 5.

In *Nash v. D.S. Nash Construction Co.,* 70 F.Supp.2d 639 (W.D.Va.1999), Judge Moon, in reliance on the opinion in *Dew,* also held that a complainant who had filed a charge with the EEOC and had failed to check the Box on Form 5 had exhausted state law remedies. The plaintiff in *Nash* had filed a charge alleging ADA violations with the EEOC, and even though the Box on his EEOC Form 5 was not checked, his claim was forwarded to the VCHR pursuant to the Worksharing Agreement for fiscal year 1998. *See id.* at 640–41. The VCHR acknowledged receipt of the charge and indicated its intention to not investigate it initially, and plaintiff was issued a notice of right to sue. *See id.* at 641. This factual scenario, as with that present in *Dew,* closely resemble the facts in the present case.

In *Nash,* Judge Moon held that "the VHRA does not require a claimant to do anything more than make an allegation of discrimination." *Id.* at 643. The court in *Nash* held that the plaintiff did exhaust all available state remedies as his failure to check the Box had no effect of the processing of his claim with the VCHR. *See id.* at 643. Judge Moon also expressed concern that requiring anything greater from complainants would be asking more than either Title VII or the VHRA require, "which is especially inappropriate in the context of a remedial antidiscrimination statute that is designed to be accessible to the layperson." *Id.* (citing *Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972)).

A more recent opinion on this issue is also consistent with Judge Payne's holding in *Dew.* In *Bolinsky v. Carter Machinery Co., Inc.,* 69 F.Supp.2d 842 (W.D.Va.1999), Judge Jones agreed with the recent district court opinions in Virginia with regard to the fact that a complainant's failure to explicitly reference state law is not deter-

minative. "A plaintiff filing a discrimination charge need only set forth facts that would be sufficient to establish a state law claim in order to exhaust her state law remedies under Title VII." *Id.* at 847–48. Judge Jones further concluded that "[t]he terms of the worksharing agreement also do not require a specific citation of state law." *Id.* at 848. Accordingly, in *Bolinsky,* the defendant's motion to dismiss was denied.

This Court has issued the most recent opinion on this issue, and it is likewise consistent with the *Dew* line of cases. In *Smith v. Center Ford, Inc.,* 71 F.Supp.2d 530 (E.D.Va.1999), this Court applied the reasoning in *Dew* to similar factual circumstances involving a 1995 Worksharing Agreement. This Court concluded that, for the reasoning as set forth in *Dew, Nash,* and *Bolinsky,* "[n]either a failure to check the Box on the EEOC Form 5 nor a failure to specifically allege a violation of state law divests a federal court of jurisdiction to hear Title VII claims." *Id.* at 537. In *Smith,* the defendants' motion to dismiss was denied.

In addition to the cases discussed above, several other district courts have been presented with the issue of whether filing with the EEOC constitutes the exhaustion of state law remedies, and all but one court has denied the respective defendants' motions to dismiss for lack of jurisdiction. *See Puryear v. County of Roanoke,* 71 F.Supp.2d 551 (W.D.Va. 1999) (denying defendant's motion to dismiss); *Capps v. City of Lynchburg,* 67 F.Supp.2d 589 (W.D.Va. 1999) (denying defendant's motion to dismiss); *Grimes v. Canadian American Transportation, C.A.T. (U.S.),* 72 F.Supp.2d 629 (W.D.Va.1999) (denying defendant's motion for summary judgment); *Harris v. The TJX Companies, Inc.,* 60 F.Supp.2d 562 (W.D.Va.1999) (denying defendant's motion to dismiss). *But see Walker v. Electrolux Corp.,* 55

F.Supp.2d 501 (W.D.Va. 1999) (granting defendant's motion to dismiss).

In light of the holdings of the District Courts in *Dew, Nash, Bolinsky,* and *Smith,* it is the opinion of this Court that the defendant's motion to dismiss should be denied. The plaintiff has met her burden under 42 U.S.C. § 2000e-5(c). Neither the signing of an EEOC Form 5 with no Box present nor a failure to specifically allege a violation of state law divests a federal court of jurisdiction to hear Title VII or ADEA claims. It was the explicit intent of the EEOC and the VCHR in establishing the procedures for the processing of charges "to provide individuals with an efficient procedure for their grievances under appropriate State or Federal law." Worksharing Agreement for Fiscal Year 1998, at ¶ I-B. To require of complainants anything more than the plaintiff has done in this case would place far too great a burden on a layperson in the plaintiff's situation. *See Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).

### Conclusion

For the reasons set forth above, defendant's motion to dismiss is **DENIED.** Furthermore, because this Court finds that this decision involves a controlling issue of law over which reasonable judges may differ, and that an immediate appeal will best serve the interests of judicial economy and avoid unnecessary expense to the parties if decided by the Court of Appeals on an Interlocutory basis, this Court hereby **CERTIFIES** this interlocutory decision as appealable under 28 U.S.C. § 1292(b). Accordingly, further proceedings are **STAYED** until the Court of Appeals has had the opportunity to address the issues presented by this case.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

It is so **ORDERED.**