**Allen D. CARTER, Plaintiff,**

v.

**ARLINGTON PUBLIC SCHOOL SYSTEM, et al., Defendants.**

No. Civ.A. 99–1514–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 18, 2000.

Charles George Aschmann, Jr., Alexandria, VA, for plaintiff.

Benjamin James Trichilo, Trichilo, Bancroft, McGavin, Horvath & Judkins, P.C., Fairfax, VA, for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

Defendants' motion to dismiss this Title VII race discrimination suit raises an issue, hotly contested in the Fourth Circuit, concerning precisely what a claimant in a deferral state must do to satisfy Title VII's exhaustion of administrative remedies requirement.

### I.[1]

Plaintiff, an African–American male, was hired by defendant, Arlington County Public School System, as an art teacher in 1977. He has been continuously so employed since that time. In 1997, defendant Bonnie Pfoutz, then Arlington's Assistant Director of Adult Education Programs, became plaintiff's supervisor. It was at this time, according to plaintiff, that defendant Pfoutz and others began to discriminate and retaliate against him on the basis of race.

More specifically, plaintiff alleges that he began to experience defendants' race-based harassment and discrimination in May 1997, when Pfoutz directed plaintiff, without explanation, to meet with the county psychologist, Dodie Gill, during the summer vacation. Plaintiff complied with this directive, meeting with Mrs. Gill several times. Pfoutz never explained to plaintiff why she insisted on these meetings. Later that summer, in August 1997, Pfoutz directed plaintiff not to discuss his employment with anyone in the school system other than herself and that if he did so, she would have him fired. During that same meeting, Pfoutz told plaintiff that his

---

1. The facts recounted here are derived from the complaint's allegations, which are assumed to be true solely for the purpose of disposing of the threshold dismissal motion at bar. *See Martin Marietta Corp. v. International Telecom. Satellite Org.,* 991 F.2d 94, 97 (4th Cir.1992).

voice was too loud, that he was "too black," and that he was often tardy. She threatened to fire him if he missed any time at the Arlington Mill High School Continuation program. In January 1998, Pfoutz suspended plaintiff for two days from the Langston Adult Education program for no stated or apparent reason. Both the coordinator of the Langston program, Greg Slater, and the coordinator of the Arlington Mill program, Suzanne Swendiman, were aware of this unwarranted suspension, yet did nothing to prevent or reverse it.

Two months later, in March 1998, Pfoutz sent the Director of Personnel, Harry Gardner, a memo in which, according to plaintiff, Pfoutz falsely claimed there had been a confrontation between plaintiff and another employee at the Langston program. On April 22, 1998, Pfoutz told plaintiff again that his loud voice was frightening students. The next day, Pfoutz appeared unannounced in plaintiff's class and interfered with his teaching by issuing instructions that contradicted plaintiff's instructions: Pfoutz instructed the class to paint when plaintiff had directed the class to watch a video. That same day, in front of the class, Pfoutz handed plaintiff a piece of paper and instructed him to read it aloud, which he did. The paper's content had no bearing on the class. This, coupled with plaintiff's belief that Pfoutz had been telling people that plaintiff was illiterate, led plaintiff to believe that Pfoutz intended the exercise as an embarrassing test of his literacy. Finally, from January through May 1999, Pfoutz and others began telling students in the Langston program not to sign up for plaintiff's art classes. As a result, plaintiff had

no students enrolled in his classes during this time.

Based on these incidents, plaintiff, in May 1999, went to the Arlington County Human Rights Commission ("AHRC") offices to file a complaint of discrimination. The AHRC declined to accept plaintiff's complaint because, according to the AHRC investigator, the AHRC did not handle complaints against the Arlington County Public School System.[2] The investigator then advised plaintiff to file a complaint with the EEOC. Following this advice, plaintiff went to the Washington Field Office of the EEOC on June 22, 1999, and filed his discrimination complaint on an EEOC Charge of Discrimination form. This form identified the Virginia Council on Human Rights ("VCHR") as the appropriate state or local agency and provided a box to be checked if the complainant wished the Charge filed with the state or local agency. Plaintiff did not check this box, nor did he explicitly allege a discrimination claim under Virginia state law.[3] Despite the lack of a check mark in the box, the Charge was nonetheless forwarded to the VCHR, the state fair employment agency, pursuant to the work-sharing agreement between that agency and the EEOC.

Thereafter, on July 15, 1999, plaintiff received a right-to-sue letter from the EEOC and on October 7, 1999, he filed the instant suit. In his complaint, plaintiff states claims for (i) discrimination on the basis of race, in violation of Title VII, (ii) retaliation for complaining of disparate treatment, in violation of Title VII, and (iii) interference with plaintiff's employment contract on the basis of race, in violation of

**2.** The precise rationale for this policy is not clear from the record. Plaintiff claims that he was told by the investigator that the AHRC did not handle complaints against the public schools because of a conflict of interest. An affidavit of Dennis Sumlin, the AHRC investigator who spoke to plaintiff, indicates that he had advised plaintiff that the AHRC did not handle complaints against the public schools because "the Arlington County Public School System is governed by the Commonwealth of

Virginia, not by the County," and consequently the AHRC lacked jurisdiction over plaintiff's discrimination complaint.

**3.** There is no record evidence that EEOC personnel advised plaintiff that he should check the box, or explained to him the consequences of not doing so. Further, there is no evidence that plaintiff was told by anyone at the EEOC or the AHRC that he needed to allege a cause of action under Virginia law.

42 U.S.C. § 1981. Defendants now move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R.Civ.P., on the ground that plaintiff failed to exhaust his administrative remedies. Additionally, the individual defendant, Bonnie Pfoutz, moves for her dismissal, for failure to exhaust administrative remedies, because she was not named in plaintiff's EEOC Charge.[4]

## II.

■ The applicable standard in resolving a threshold Rule 12(b)(1) dismissal motion is well established. Where, as here, a defendant seeks dismissal on the ground that the complaint, on its face, fails to state a basis for subject matter jurisdiction, courts must "assume[ ] all facts in the complaint are true, thus providing the plaintiff with the same procedural protections as a Rule 12(b)(6) determination." *Lane v. David P. Jacobson & Co.*, 880 F.Supp. 1091, 1094 (E.D.Va.1995); *see also Dickey v. Greene*, 729 F.2d 957, 958 (4th Cir.1984). Yet, there is an important difference between Rules 12(b)(1) and 12(b)(6) in this regard. On a motion to dismiss pursuant to Rule 12(b)(1), unlike Rule 12(b)(6), courts may consider evidence outside of the complaint to resolve factual disputes concerning jurisdiction without converting the motion into one for summary judgment. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). These procedural principles guide and constrain the resolution of the motions at bar.

### A. Exhaustion of State Administrative Remedies

This case raises a question currently unresolved by controlling precedent and sharply disputed among the circuit's lower courts, namely, what constitutes exhaustion of remedies in a deferral state for the purposes of Title VII? Peculiarly, this issue appears to have flared up only in this Circuit. The question is not whether a Title VII claimant must exhaust administrative remedies; this is uncontroversial, for under the statute's remedial scheme, it is clear that a claimant's failure to exhaust administrative remedies deprives a federal court of jurisdiction. *See* 42 U.S.C. § 2000e–5(c). Rather, because Virginia is a deferral state,[5] a Title VII claimant in Virginia is required to commence proceedings with the state agency "under the [s]tate or local law" before filing suit,[6] and what is controversial is precisely what claimants must do to commence proceedings with the state agency under state law.

District courts in this circuit are split on this question. Some have held that, because of the work-sharing agreement between the EEOC and the VCHR, simply filing a Charge of Discrimination with the EEOC alleging facts that, if true, would state a claim under state law is sufficient to commence proceedings under state law. *See, e.g., Bolinsky v. Carter Machinery Co., Inc.*, 69 F.Supp.2d 842 (W.D.Va.1999). Other district courts have held that claimants adequately exhaust state remedies by checking the box on the EEOC Charge form requesting that the Charge be forwarded to the state deferral agency and

4. In his complaint, plaintiff named another individual defendant, Dr. Robert Smith, the Superintendent of the Arlington County Public Schools. By agreement of the parties, Dr. Smith was dismissed from the case. *Carter v. Arlington Public School System et al.*, Civ.A. No. 99-1514-A, Order dated Jan. 7, 2000.

5. *See Tinsley v. First Union National Bank*, 155 F.3d 435, 440 (4th Cir.1998). A "deferral state" is a state which has a state or local law prohibiting unlawful employment practices in the same manner as Title VII, and a state

agency that is authorized to grant or seek relief from such practices. *See* 42 U.S.C. § 2000e–5. In Virginia, the Virginia Human Rights Act ("VHRA"), Va.Code § 2.1–715 *et seq.*, broadly prohibits discriminatory employment practices, thereby bringing it under the rubric of a prohibitory state law for purpose of § 2000e–5(c). *See Tinsley*, 155 F.3d at 440. And the VCHR is authorized to grant or seek relief from such practices. *See id.* at 439.

6. 42 U.S.C. § 2000e–5(c); *see also Flippo v. American Home Products Corp.*, 59 F.Supp2d. 572, 575 (E.D.Va.1999).

alleging facts in the EEOC Charge that would, if true, state a claim under state law. *See, e.g., Grimes v. Canadian American Transportation, C.A.T. (U.S.), Inc.,* 72 F.Supp.2d 629 (W.D.Va.1999). And still other district courts have held that filing a federal discrimination claim with the state deferral agency, but failing to allege a state law cause of action is *not* sufficient to exhaust state administrative remedies. *See, e.g., Walker v. Electrolux Corp.,* 55 F.Supp.2d 501, 503–04 (W.D.Va.1999). Because of this judicial cacophony, several district courts in the Fourth Circuit have certified this issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). *See, e.g., Morris v. Waste Management of Virginia, Inc.,* 71 F.Supp.2d 537, 543 (E.D.Va.1999).[7]

A Fourth Circuit panel addressed the issue, at least in part, in an unpublished opinion in which the panel held that a plaintiff who filed a timely complaint with the EEOC, but did not (i) check the box on the Charge of Discrimination form requesting that the EEOC file the charge with the appropriate state agency, (ii) allege a state law claim, or (iii) take any steps to institute state proceedings had *not* stated a claim of discrimination under state law, and consequently, had failed to exhaust her state remedies. *See Dodge v. Philip Morris, Inc.,* 175 F.3d 1014, 1999 WL 162955 at *2 (4th Cir. March 25, 1999) (unpublished disposition). In affirming the district court's dismissal, the *Dodge* court stated that it did not need to "decide whether filing with the EEOC satisfied the requirement of commencing state proceedings with the VCHR," thereby leaving this issue unresolved. *Id.* As the case was not published, it is not binding precedent, and some district courts, finding its reasoning unpersuasive, have declined to follow it.[8] Thus, the controversy continues.

The instant case fits squarely within the realm of the debate. In this case, plaintiff filed at the EEOC a Charge of Discrimination form in which he alleged discrimination on the basis of race in violation of Title VII, but did not (i) check the box requesting that the Charge be forwarded to the state agency or (ii) explicitly allege a state law cause of action.[9] Defendants argue that both are required for exhaustion. This formalist argument is ultimately unpersuasive.

Analysis properly begins with the language of the statute, which states, in pertinent part, that no discrimination charge may be filed with the EEOC by an aggrieved party "before the expiration of sixty days after *proceedings have been commenced under the State or local law.*" 42 U.S.C. § 2000e–5(c) (emphasis added). The plain meaning of this language, by itself, does not resolve the question because it does not specify precisely how or what a claimant must do to commence proceedings under the state or local law. What is critical and dispositive here is the purpose and operation of the work-sharing agreement between the EEOC and the state deferral agency, the VCHR. This work-sharing agreement, which is typical of agreements that exist between the EEOC and other deferral states, "establishes stream-lined procedures for receiving filings, processing charges, exchanging information and resolving claims between the two agencies." *Bolinsky,* 69 F.Supp.2d at 845. Under the Virginia agreement, the EEOC and the VCHR each designate the other as its agent for the purposes of receiving and drafting charges, so that EEOC's receipt of charges on the VCHR's behalf automatically initiates proceedings with both the EEOC and the VCHR. *See Grimes,* 72

---

7. These appeals have not yet been scheduled for oral argument.

8. *See Bolinsky,* 69 F.Supp.2d at 848 n. 9 ("Although *Dodge* is on point, because unpublished opinions are not binding precedent in this circuit and because I do not find *Dodge* to

be persuasive, I respectfully decline to follow it.").

9. As stated earlier, despite the lack of a check mark, the EEOC automatically forwarded the Charge to the VCHR pursuant to the work-sharing agreement.

F.Supp.2d at 633. The agreement also contains a waiver of the VCHR's 60–day right of exclusive jurisdiction to allow the EEOC to proceed immediately with the processing of the claims that it receives.[10] *See Bolinsky,* 69 F.Supp.2d at 846.

■ The operation of the work-sharing agreement makes clear that claimants effectively commence proceedings under Virginia law for Title VII exhaustion purposes simply by filing a claim with the EEOC alleging facts that, if true, would state a claim for discrimination under Virginia law. And this conclusion holds true whether or not the claimant checks the box specifically requesting that the claims be forwarded to the VCHR because under the work-sharing agreement, the claim is automatically referred to the VCHR.[11] This conclusion also holds true whether or not the claim refers explicitly to Virginia law because Virginia law itself requires no such explicit reference. *See* 22 Va.Admin.Code § 25–10–50(B) (1999). All that Virginia law requires in a discrimination charge to the VCHR is a "brief factual statement documenting the alleged discrimination and identifying the employer." *Flippo,* 59 F.Supp.2d at 576.[12]

Several progressive examples help illustrate the soundness of the conclusion that filing a claim with the EEOC is sufficient to commence proceedings under state law for Title VII purposes whether or not the form box is checked or the Virginia Code cited. First, consider a claimant who files a discrimination charge directly with the VCHR and explicitly cites Virginia Code as a basis for the claim. No one would dispute that this claimant has commenced proceedings under state law as required for exhaustion under Title VII. Indeed, there would similarly be no dispute in this regard if the claimant omitted from her charge any explicit reference to Virginia law. This is so because it is enough under Virginia law for a claim to allege facts that, if true, would state a claim under Virginia law. *See Flippo,* 59 F.Supp.2d at 576. And, finally, there should still be no dispute that this claimant has commenced proceedings under state law if she filed the claim with the EEOC instead of the VCHR because the work-sharing agreement provides for automatic referral to the VCHR whether or not the claimant requests it by checking a form box. *See Grimes,* 72 F.Supp.2d at 633. In sum, a claimant who completes a Charge of Discrimination form with the EEOC stating facts that, if true, would state a claim under Virginia law, while failing to cite Virginia law, has satisfied Title VII's exhaustion requirement just as a claimant who files such a claim directly with the VCHR has done.

---

**10.** When a Charge of Discrimination is brought first to the EEOC in a deferral state, the EEOC refers the Charge to the appropriate state or local agency, which normally has exclusive jurisdiction over the Charge for 60 days. *See Davis v. North Carolina Dept. of Correction,* 48 F.3d 134, 137 (4th Cir.1995).

**11.** *See Grimes,* 72 F.Supp.2d at 633 ("The Virginia Worksharing Agreement contains no requirement that a claimant check the box.... Instead, the agreement expressly stipulates that the EEOC's receipt of charges automatically commences proceedings with the VCHR.").

**12.** Defendant argues that *Davis* holds that a Title VII plaintiff must allege a claim of discrimination under a specified state law in order to exhaust administrative remedies. *See Davis,* 48 F.3d at 138. *Davis,* however, can be distinguished in several important ways. First, *Davis* dealt with the work-shar-

ing agreement between the EEOC and the North Carolina state agency, which is different than the work-sharing agreement applicable here. *See id.* at 136. Second, the *Davis* panel noted that the case "was something of an aberration" because the plaintiff insisted that he brought only a Title VII claim, "notwithstanding the conceded applicability of state discrimination laws." *Id.* at 141. The panel was unwilling to hold that a federal court could obtain jurisdiction under such circumstances because plaintiff's refusal to pursue state law remedies frustrated Congress's intention to encourage resolution of claims at the state level. *See id.* Where a claimant fails to allege a state law cause of action inadvertently, as did the plaintiff in this case, because he or she was unaware of the possibility of relief under state law, this reasoning would not apply.

In this case, plaintiff alleges facts in his EEOC Charge, such as harassment and disparate treatment based on race, that, if true, would constitute a violation of Title VII. As such, they would also constitute a violation of the VHRA because "[t]he VHRA essentially makes any federal violation a violation of Virginia law...." *Grimes,* 72 F.Supp.2d at 634. Just as it was unnecessary for plaintiff to cite Title VII in his EEOC Charge, it was unnecessary for plaintiff here to cite the VHRA. As plaintiff's EEOC Charge of Discrimination identified an employer and set forth facts that, if true, would establish a violation of federal and state law, it was sufficient to satisfy Title VII's exhaustion requirement.

The soundness of this conclusion is confirmed by Title VII's purpose as "a remedial anti-discrimination statute that is designed to be accessible to the layperson." *Nash v. D.S. Nash Construction Co.,* 70 F.Supp.2d 639, 644 (W.D.Va.1999); *see also Flippo,* 59 F.Supp.2d at 577 (courts are commanded to construe remedial legislation broadly to effectuate its purpose). An unrepresented claimant, like plaintiff, cannot be expected to know that both federal and state laws banning discrimination in the workplace exist. Nor can such a claimant be expected to understand the intricate interrelationship of such laws, or to know whether his or her cause of action arises under Title VII, the American with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), the Virginia Human Rights Act or the Virginians with Disabilities Act ("VDA"). Given the complexity of the laws in this area, it is unrealistic to expect claimants to cite specific state statutes in their complaints, to check certain boxes, or to go to a particular state agency. A result different from the one reached here would essentially mean that claimants likely would not satisfy Title VII's exhaustion requirement unless they were either lawyers or lucky.

The facts of the instant case underscore the difficulties lay claimants face in complying with Title VII's requirements if they are interpreted in such a restrictive manner. Plaintiff in this case initially went to a state agency, the AHRC, to file a complaint, but was told he needed to go to the EEOC because the AHRC would not handle a complaint against the Arlington public schools. Plaintiff complied with these instructions and filed a complaint with the EEOC's Washington Field Office setting forth the facts of the alleged discrimination and identifying his employer. Having been turned away from the state or local agency, plaintiff could hardly be expected to know he was supposed to check a box requesting the Charge to be forwarded to that very agency, or that he had to refer to Virginia law, or that he should have gone to the VCHR. No one at the EEOC or the AHRC told him of these pitfalls. Plaintiff diligently attempted to comply with Title VII's administrative requirements. Under the circumstances, it would be flatly contrary to the purpose of Title VII, as remedial anti-discrimination legislation, to construe the statute to bar plaintiff's claim on such procedural technicalities.

### B. Dismissal of the Individual Defendant

Also at issue is Pfoutz's motion for her dismissal from the suit for lack of jurisdiction. To exhaust administrative remedies as to a particular defendant, a plaintiff must name that defendant in his or her EEOC charge. *See Baradell v. Board of Social Services,* 970 F.Supp. 489, 492 (W.D.Va.1997). A party not named in the initial charge with the EEOC, ordinarily, may not be subsequently sued for alleged discrimination. *See Alvarado v. Board of Trustees of Montgomery Community College,* 848 F.2d 457, 458 (4th Cir.1988). This requirement serves two purposes: (i) notifying the charged party of the asserted violation and (ii) bringing the charged party before the EEOC to facilitate the goal of securing voluntary compliance with the law. *See Kouri v. Todd,* 743 F.Supp. 448, 450 (E.D.Va.1990). Yet, because EEOC charges are generally completed by lay persons, "courts routine-

ly construe this naming requirement liberally." *Id.* at 451. Accordingly, an exception has been recognized for cases where there is substantial identity between the defendant and the party named in the charge. *See id.* While the Fourth Circuit has not explicitly adopted this exception, "it has indicated its approval in dictum." *Tietgen v. Brown's Westminster Motors, Inc.,* 921 F.Supp. 1495, 1498 (E.D.Va.1996).

In the instant case, it is undisputed that plaintiff did not name Pfoutz in either the caption or the body of his EEOC Charge. The only reference to Pfoutz in the Charge is plaintiff's statement that he began experiencing harassment in 1997, after the arrival of the new Assistant Director of Adult Education Programs. While identifying Pfoutz by title in the body of the Charge may indicate that plaintiff believed the harassment he was experiencing was attributable to her, it does not indicate that he intended to include her in the charge. As plaintiff identified only the Arlington County Public Schools as his employer, and did not mention Pfoutz by name, the EEOC would not have viewed Pfoutz as a party to be included in conciliation efforts or brought into voluntary compliance. Nor could Pfoutz have imagined, based on plaintiff's EEOC Charge, that she would be named as a party to plaintiff's suit, for, not only is she never mentioned by name in the charge, none of the harassment described in the charge is explicitly attributed to her. Thus, the purposes behind the naming requirement, i.e., providing notice and an opportunity to bring the party into voluntary compliance, were not satisfied as to Pfoutz. *See Kouri,* 743 F.Supp. at 450.

Nor does the substantial identity exception to the naming requirement apply in this case. To find substantial identity between a named and an unnamed party, courts require that the interests of the named party be so similar to the unnamed party's interests that, for the purpose of obtaining voluntary conciliation and compliance, it would be unnecessary to name the party in the EEOC proceedings. *See*

*Nicol v. Imagematrix,* 767 F.Supp. 744, 751 (E.D.Va.1991) citing *Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3rd Cir.1977). Courts have found, for example, that substantial identity exists in this regard between a corporation and its individual directors. *See Nicol,* 767 F.Supp. at 751; *Mayo v. Questech, Inc.,* 727 F.Supp. 1007, 1011 (E.D.Va.1989). In the present case, Pfoutz's interests are not so similar to the interests of the Arlington County Public Schools that it would be unnecessary, for the purpose of obtaining voluntary compliance, to include Pfoutz in the EEOC proceedings. Pfoutz is simply a low level administrator in the school system, not the Superintendent or other high-ranking official, comparable to a director of a corporation, who would be substantially identical to the Arlington County Public Schools.

### III.

In conclusion, the motion to dismiss defendant Arlington County Public Schools for lack of jurisdiction is denied. The motion to dismiss defendant Pfoutz is granted. An appropriate order will issue.